

# EXCLUSIVE REPRESENTATION AGREEMENT

The undersigned ("Seller") hereby employs Marcus & Millichap Real Estate Investment Services, Inc. ("Broker") and grants to Broker, for a period of time (the "Term"), which has been determined as a result of negotiations between Broker and Seller, commencing on __September 4__, 2025_, and ending at midnight on _March 4__, 2026_, and subject to extension as set forth in paragraph 17 below, or as otherwise extended in writing by Seller and Broker, the exclusive and irrevocable right and authority to sell that certain real property (the "Property") described as follows:

**3521 Tulip Street, 3501 Tulip Street, 3550R-98 Aramingo Avenue
Philadelphia PA 19134
APN: 884349755, 884349760, 885809300**

1) **PURCHASE PRICE/TERMS:** Broker is authorized to offer the Property for sale at a gross purchase price of **$750,000 Seven Hundred Fifty Thousand Dollars** in cash, or upon the terms stated on an Addendum attached hereto, if any, or in all cases, upon such other terms and conditions as Seller may approve in writing.

2) **TITLE:** Seller represents and warrants to Broker that fee title to the Property is now vested as follows __Robert H Holber as Chapter 7 Trustee of Tioga Fuel Company Inc.__. Further that Seller and the individuals executing this Representation Agreement on behalf of Seller are duly authorized and empowered to execute this Representation Agreement and any subsequent purchase agreement, and that execution hereof shall not result in any breach of, or constitute a default under, any contract or other agreement to which Seller is a party.

3) **COMMISSION:** The amount of commission to which Broker is entitled and which Seller agrees to pay to Broker has been determined as a result of negotiations between Broker and Seller. In consideration of the brokerage services to be rendered by Broker, Seller agrees to pay to Broker a commission equal to __Six__ percent (_6%_) of the purchase price of the Property, or any portion of it (which shall include any interest in the Property or in its ownership) (or total consideration paid or assumed by Buyer for the Property, or any portion of it, whichever is higher) upon the occurrence of any of the following events:

   a. Broker procures a buyer during the Term, or any extension thereof, who is ready, willing, and able to purchase the Property, or any portion of it, on the terms and conditions set forth herein or on any other terms and conditions acceptable to Seller; or

   b. The Property, or any portion of it, is sold, exchanged, or otherwise conveyed during the Term, or any extension thereof, whether by Seller or by or through any other person or entity. If no purchase price is identified, the commission shall be calculated as a percentage of the exchange value of the Property; or

   c. The Property, or any portion of it, is withdrawn from the market or made unmarketable by Seller during the Term, or any extension thereof, or this Representation Agreement is revoked by Seller, or Seller otherwise prevents or precludes Brokers performance hereunder, in which case the commission immediately owing to Broker shall be equal to __Six__ percent (_6%_) of the listed purchase price set forth under paragraph 1 herein; or

   d. A sale, exchange or other conveyance of the Property, or any portion of it, is made within nine (9) months after the expiration of the Term to a person or entity with whom Broker has negotiated (either directly or through another broker or agent), or to whose attention Broker has brought the Property, or who was introduced to Seller by Broker as a prospective purchaser (herein, "Prospective Purchaser"), provided that the name of any such person or entity has either been submitted to Seller by delivery of a written offer to purchase or letter of intent, prior to expiration of the Term, or by delivery to Seller by Broker of written notice of said Prospective Purchaser(s) within ten (10) calendar days following such expiration. With respect to a sale, exchange or other conveyance to any such person or entity, Broker shall conclusively be deemed to be the procuring cause. The term "Prospective Purchaser" shall include that person or entity to whose attention Broker has brought the Property, as well as any partnership, joint venture, corporation, limited liability company, trust, or other similar entity which that person or entity represents or in which it holds an ownership or beneficial interest.



PA Short Form Rep 2024        1 of 4        Seller's Initials _____    Broker's Initials _____

e. Seller and Broker agree that if completion of a sale of the Property pursuant to a duly executed purchase agreement is prevented by default of the buyer, Seller shall be obligated to pay Broker an amount of one-half of any damages or other monetary compensation (including liquidated damages) collected from said Buyer by suit or otherwise as a consequence of Buyer's default, if and when such damages or other monetary compensation are collected. However, the amount due Broker shall not exceed the brokerage commission set forth above. The term "Property" shall include any interest therein or in its ownership.

**Seller understands and agrees that Broker shall have earned and shall be paid Broker's commission, pursuant to and in accordance with this paragraph 3, regardless of who sells, exchanges, or otherwise conveys or transfers the Property, or any interest therein, whether during the Term or within nine (9) months after expiration of the Term to a Prospective Purchaser.**

4) **INDEMNIFICATION:** Seller agrees to indemnify and hold Broker harmless from any and all liability, damages, losses, causes of action, or other claims (including attorneys' fees and other defense costs) arising from or asserted in connection with any incomplete or inaccurate information provided by Seller, or any material information concerning the Property which Seller has failed to disclose.

5) **RECORDS, FINANCIAL DATA AND MARKETING ASSISTANCE:** Seller agrees to furnish, to certify as true and correct, and to make available to Broker and prospective buyers all financial data, rent statements, leases and other operating records of the Property, and to provide Broker with such assistance as Broker may reasonably request in marketing the Property. Seller agrees to refer promptly to Broker all inquiries of anyone interested in the Property.

6) **INSPECTION OF PROPERTY:** Seller agrees that Broker and its representatives shall have the right to enter upon and inspect the interior and exterior of the Property with prospective purchasers at all reasonable times.

7) **SCOPE OF BROKER'S AUTHORITY AND RESPONSIBILITY:** Broker shall assist Seller in marketing the Property and in negotiating the terms and conditions of sale with any prospective purchasers. Broker shall not, however, have authority to bind Seller to any contract or purchase agreement. Broker shall not be responsible for performing any due diligence or other investigation of the Property, or for providing professional advice with respect to any legal, tax, engineering, construction, or hazardous materials issues. Except for confidential information regarding Seller's business or financial condition and the negotiation of the terms of a purchase agreement between Seller and a prospective purchaser, Seller and Broker agree that their relationship is at arm's length.

8) **LIMITATION OF LIABILITY:** Except for Broker's gross negligence or willful misconduct, Broker's liability for any breach or negligence in its performance of this Agreement shall be limited to the greater of $50,000 or the amount of compensation actually received by Broker in any transaction hereunder.

9) **AFFILIATED BROKERS/DUAL AGENCY:** Broker is affiliated with other brokerage companies in other states. Broker shall disseminate information about the Property to such affiliated brokers, inviting the submission of offers on the Property. Seller authorizes both Broker and any affiliated broker to represent any prospective buyer in the acquisition of the Property, and to submit offers on behalf of such buyers. Seller understands that this authorization may result in Agent's representing both Seller and a prospective buyer, and Seller hereby authorizes and consents to such dual representation.

10) **BROKER COOPERATION:** Broker is authorized to use its discretion whether to cooperate with other duly licensed real estate brokers. The sharing of commissions received by seller with other brokers shall be at the sole and absolute discretion of Broker, and by separate agreement between Broker and any cooperating broker. Seller agrees that, in the event any broker other than Broker or a broker affiliated with Broker is involved in the disposition of the property, Broker shall have no liability to Seller for the acts or omissions of such other broker, who shall not be deemed to be a subagent of Broker.

11) **ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:** All disputes arising between the Parties with respect to the subject matter of this Representation Agreement (including but not limited to the payment of commissions as provided herein) shall be settled exclusively by final, binding arbitration. The judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

The arbitration will proceed in the county where Broker's office is located and be conducted by the American Arbitration Association ("AAA"), or such other administrator as the parties shall mutually agree upon, in accordance with the AAA's then-applicable Commercial Arbitration Rules (the "Rules"). Any party who fails or refuses to submit to arbitration following a demand by the other party shall bear all costs and expenses, including attorneys' fees, incurred by such other party in compelling arbitration.

The arbitration will be decided by a single arbitrator selected according to the Rules. The arbitrator will decide any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication and may grant any remedy or relief that a court could order or grant on similar motions. The arbitrator shall apply the provisions of this Representation Agreement without varying therefrom, and shall not have the power to add to, modify, or change any of the provisions hereof.

In any arbitration proceeding discovery will be permitted only in accordance with the terms of this paragraph. Discovery by each party shall be limited to: (i) a maximum number of five (5) depositions limited to four hours each; (ii) requests for production of documents; (iii) two interrogatories: one inquiring into the amount of damages sought by the other party and another into the calculation of those damages; and (iv) subpoenas upon third parties for production of documents, depositions, and to appear at a hearing. The scope of discovery may be expanded only upon the mutual consent of the parties. Discovery not set forth in this paragraph shall not be permitted.

**The Parties understand and agree that they are entering into this arbitration agreement voluntarily, and that by doing so they are waiving their rights to a jury trial or to have their claims otherwise litigated in court.**

Seller's Initials _RHH_  Broker's Initials _A_

12) **ATTORNEYS' FEES:** In any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, including Broker, the prevailing party shall be entitled to recover its costs, including costs of arbitration, and reasonable expert witness and attorneys' fees in addition to any other relief to which such party may be entitled.

13) **GOVERNING LAW:** Pennsylvania law and jurisdiction shall govern this Agreement and all non-waivable requirements of Broker under the Pennsylvania Real Estate Licensing and Registration Act ("RELRA") and Pennsylvania Real Estate Commission Regulations ("PREC Regulations") shall be incorporated herein by reference. Seller acknowledges (a) A Real Estate Recovery Fund exists in Pennsylvania to reimburse a person who has obtained a final civil judgment against a Commonwealth of Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting legal and equitable remedies. Details about the Fund may be obtained by calling the Pennsylvania Real Estate Commission at 717-783-3658. (b) If required by Pennsylvania Act 112, as amended by Act 125, a "Consumer Notice" of Broker's expertise, conditions of compliance, laws, and regulations applicable to the intended transaction has been given to Seller by Broker at the initial interview. (c) A financial interest notice in writing as required by RELRA has been given to Seller by Broker advising of any financial interest Broker has in the Property, settlement service providers, or any party having an interest in the Property, or will be given by Broker to Seller if such develops during the Term of this Agreement.

14) **DEPOSITS:** Broker, or any other person that Seller and Buyer name in the Purchase Agreement, shall keep all deposit monies paid by or for the Buyer in an escrow account pending consummation of the sale or a prior termination thereof. If held by Broker, Broker's escrow account will be maintained as required by RELRA and PREC Regulations. Seller agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Seller has accepted the related offer.

15) **COMMERCIAL REAL ESTATE BROKER LIEN ACT:** Seller acknowledges that, pursuant to the Pennsylvania Commercial Real Estate Broker Lien Act, Broker has a right to place a lien claim on Seller's sale proceeds in the amount of the compensation agreed upon in this Agreement upon the fulfillment of the conditions stated in this Agreement and to keep the lien in place until Broker's Commission, interest, costs and attorney's fees are paid or escrowed. This lien claim may be maintained during arbitration proceedings and arbitration may be utilized as an alternative to a civil action in a court of proper jurisdiction.

16) **NO DISCRIMINATION**: Federal and state laws make it illegal for Seller, Broker or anyone else to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILY STATUS (children under 18 years of age), AGE (40 or over), NATIONAL ORIGIN, or USE OR HANDLING/TRAINING OF SUPPORT OF GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale or lease of property. Seller and Broker agree to comply with the laws described in this paragraph in the sale or lease of the Property, and further agree to indemnify and hold each other harmless from all liability arising from the other's failure to comply with its obligations under this paragraph or any other such laws prohibiting discrimination.

17) **EXTENSION OF TERM**: If an agreement or letter of intent for the sale of the Property is executed by all necessary parties, and/or an escrow is opened, and if said agreement or letter of intent is revoked, rescinded or otherwise terminated, and/or the escrow account is subsequently canceled, the Term shall be extended by the number of calendar days during which the sale agreement or letter of intent was in effect or the escrow was open, whichever is longer. The maximum extension permitted hereunder shall be the number of days remaining on the Term from the date the sale agreement or letter of intent was executed, or an escrow opened, whichever event occurred earlier. Notwithstanding the foregoing, this Representation Agreement shall expire in all cases no later than nine (9) months after the original termination date stated above. The purpose of this extension provision is to allow Broker the opportunity to expose the Property to the marketplace for the full period of time contemplated by this Agreement.

18) **MARKETING**: Client understands and agrees that Broker and its affiliates and assigns may issue marketing, press releases, tombstones and/or advertising concerning the transaction. Information released typically will include the sales price, name and service marks of Client, property description, and location.

19) **OTHER TERMS AND CONDITIONS:**

   A) <u>This listing agreement and any sale is subject to Bankruptcy Court Approval.</u>

   B) <u>Marcus and Millichap was initially engaged by Tioga Fuel Inc. on February 7, 2025 and Listed the property as of that time and solicited interest from various buyers since that date.</u>

SELLER UNDERSTANDS AND ACKNOWLEDGES THAT BROKER IS NOT QUALIFIED TO PROVIDE, AND HAS NOT BEEN CONTRACTED TO PROVIDE, LEGAL, FINANCIAL OR TAX ADVICE, AND THAT ANY SUCH ADVICE MUST BE OBTAINED FROM SELLER'S ATTORNEY, ACCOUNTANT OR TAX PROFESSIONAL. THE PARTIES ARE ADVISED TO CONSULT WITH THEIR RESPECTIVE ATTORNEYS CONCERNING THE LEGAL EFFECT AND VALIDITY OF THIS AGREEMENT PRIOR TO ITS EXECUTION.

SELLER NAME: <u>Robert H. Holer</u>       SELLER'S SIGNATURE: *Robert H. Holber* (DocuSigned, 4DBB141161A84A1...)

DATE: 9/4/2025 | 13:15:07 PDT       Address: <u>41 e. Front Street Media, PA 19063</u>

BROKER NAME: <u>Timothy Stephenson</u>       BROKER'S SIGNATURE: *Timothy B Stephenson* (DocuSigned, EF7E38E03868488...)

DATE: 9/4/2025 | 13:02:54 PDT       Address: <u>2005 Market Street Philadelphia, PA 19102</u>

Seller's Initials: RHH       Broker's Initials: /ts



# EXCLUSIVE REPRESENTATION AGREEMENT

The undersigned ("Seller") hereby employs Marcus & Millichap Real Estate Investment Services, Inc. ("Broker") and grants to Broker, for a period of time (the "Term"), which has been determined as a result of negotiations between Broker and Seller, commencing on __September 4__, 2025_, and ending at midnight on _March 4__, 2026_, and subject to extension as set forth in paragraph 17 below, or as otherwise extended in writing by Seller and Broker, the exclusive and irrevocable right and authority to sell that certain real property (the "Property") described as follows:

**3573-77 Sepviva Street**
**Philadelphia PA 19134**
**APN: 884349810**

1) **PURCHASE PRICE/TERMS:** Broker is authorized to offer the Property for sale at a gross purchase price of **$750,000 Seven Hundred Fifty Thousand Dollars** in cash, or upon the terms stated on an Addendum attached hereto, if any, or in all cases, upon such other terms and conditions as Seller may approve in writing.

2) **TITLE:** Seller represents and warrants to Broker that fee title to the Property is now vested as follows **Robert H Holber as Chapter 7 Trustee of Tioga Fuel Company Inc.**. Further that Seller and the individuals executing this Representation Agreement on behalf of Seller are duly authorized and empowered to execute this Representation Agreement and any subsequent purchase agreement, and that execution hereof shall not result in any breach of, or constitute a default under, any contract or other agreement to which Seller is a party.

3) **COMMISSION:** The amount of commission to which Broker is entitled and which Seller agrees to pay to Broker has been determined as a result of negotiations between Broker and Seller. In consideration of the brokerage services to be rendered by Broker, Seller agrees to pay to Broker a commission equal to __Six__ percent (_6%_) of the purchase price of the Property, or any portion of it (which shall include any interest in the Property or in its ownership) (or total consideration paid or assumed by Buyer for the Property, or any portion of it, whichever is higher) upon the occurrence of any of the following events:

   a. Broker procures a buyer during the Term, or any extension thereof, who is ready, willing, and able to purchase the Property, or any portion of it, on the terms and conditions set forth herein or on any other terms and conditions acceptable to Seller; or

   b. The Property, or any portion of it, is sold, exchanged, or otherwise conveyed during the Term, or any extension thereof, whether by Seller or by or through any other person or entity. If no purchase price is identified, the commission shall be calculated as a percentage of the exchange value of the Property; or

   c. The Property, or any portion of it, is withdrawn from the market or made unmarketable by Seller during the Term, or any extension thereof, or this Representation Agreement is revoked by Seller, or Seller otherwise prevents or precludes Brokers performance hereunder, in which case the commission immediately owing to Broker shall be equal to __Six__ percent (_6%_) of the listed purchase price set forth under paragraph 1 herein; or

   d. A sale, exchange or other conveyance of the Property, or any portion of it, is made within nine (9) months after the expiration of the Term to a person or entity with whom Broker has negotiated (either directly or through another broker or agent), or to whose attention Broker has brought the Property, or who was introduced to Seller by Broker as a prospective purchaser (herein, "Prospective Purchaser"), provided that the name of any such person or entity has either been submitted to Seller by delivery of a written offer to purchase or letter of intent, prior to expiration of the Term, or by delivery to Seller by Broker of written notice of said Prospective Purchaser(s) within ten (10) calendar days following such expiration. With respect to a sale, exchange or other conveyance to any such person or entity, Broker shall conclusively be deemed to be the procuring cause. The term "Prospective Purchaser" shall include that person or entity to whose attention Broker has brought the Property, as well as any partnership, joint venture, corporation, limited liability company, trust, or other similar entity which that person or entity represents or in which it holds an ownership or beneficial interest.

PA Short Form Rep 2024                    1 of 4                  Seller's Initials _RHH_    Broker's Initials ___

e. Seller and Broker agree that if completion of a sale of the Property pursuant to a duly executed purchase agreement is prevented by default of the buyer, Seller shall be obligated to pay Broker an amount of one-half of any damages or other monetary compensation (including liquidated damages) collected from said Buyer by suit or otherwise as a consequence of Buyer's default, if and when such damages or other monetary compensation are collected. However, the amount due Broker shall not exceed the brokerage commission set forth above. The term "Property" shall include any interest therein or in its ownership.

**Seller understands and agrees that Broker shall have earned and shall be paid Broker's commission, pursuant to and in accordance with this paragraph 3, regardless of who sells, exchanges, or otherwise conveys or transfers the Property, or any interest therein, whether during the Term or within nine (9) months after expiration of the Term to a Prospective Purchaser.**

4) **INDEMNIFICATION:** Seller agrees to indemnify and hold Broker harmless from any and all liability, damages, losses, causes of action, or other claims (including attorneys' fees and other defense costs) arising from or asserted in connection with any incomplete or inaccurate information provided by Seller, or any material information concerning the Property which Seller has failed to disclose.

5) **RECORDS, FINANCIAL DATA AND MARKETING ASSISTANCE:** Seller agrees to furnish, to certify as true and correct, and to make available to Broker and prospective buyers all financial data, rent statements, leases and other operating records of the Property, and to provide Broker with such assistance as Broker may reasonably request in marketing the Property. Seller agrees to refer promptly to Broker all inquiries of anyone interested in the Property.

6) **INSPECTION OF PROPERTY:** Seller agrees that Broker and its representatives shall have the right to enter upon and inspect the interior and exterior of the Property with prospective purchasers at all reasonable times.

7) **SCOPE OF BROKER'S AUTHORITY AND RESPONSIBILITY:** Broker shall assist Seller in marketing the Property and in negotiating the terms and conditions of sale with any prospective purchasers. Broker shall not, however, have authority to bind Seller to any contract or purchase agreement. Broker shall not be responsible for performing any due diligence or other investigation of the Property, or for providing professional advice with respect to any legal, tax, engineering, construction, or hazardous materials issues. Except for confidential information regarding Seller's business or financial condition and the negotiation of the terms of a purchase agreement between Seller and a prospective purchaser, Seller and Broker agree that their relationship is at arm's length.

8) **LIMITATION OF LIABILITY:** Except for Broker's gross negligence or willful misconduct, Broker's liability for any breach or negligence in its performance of this Agreement shall be limited to the greater of $50,000 or the amount of compensation actually received by Broker in any transaction hereunder.

9) **AFFILIATED BROKERS/DUAL AGENCY:** Broker is affiliated with other brokerage companies in other states. Broker shall disseminate information about the Property to such affiliated brokers, inviting the submission of offers on the Property. Seller authorizes both Broker and any affiliated broker to represent any prospective buyer in the acquisition of the Property, and to submit offers on behalf of such buyers. Seller understands that this authorization may result in Agent's representing both Seller and a prospective buyer, and Seller hereby authorizes and consents to such dual representation.

10) **BROKER COOPERATION:** Broker is authorized to use its discretion whether to cooperate with other duly licensed real estate brokers. The sharing of commissions received by seller with other brokers shall be at the sole and absolute discretion of Broker, and by separate agreement between Broker and any cooperating broker. Seller agrees that, in the event any broker other than Broker or a broker affiliated with Broker is involved in the disposition of the property, Broker shall have no liability to Seller for the acts or omissions of such other broker, who shall not be deemed to be a subagent of Broker.

11) **ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:** All disputes arising between the Parties with respect to the subject matter of this Representation Agreement (including but not limited to the payment of commissions as provided herein) shall be settled exclusively by final, binding arbitration. The judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

The arbitration will proceed in the county where Broker's office is located and be conducted by the American Arbitration Association ("AAA"), or such other administrator as the parties shall mutually agree upon, in accordance with the AAA's then-applicable Commercial Arbitration Rules (the "Rules"). Any party who fails or refuses to submit to arbitration following a demand by the other party shall bear all costs and expenses, including attorneys' fees, incurred by such other party in compelling arbitration.

The arbitration will be decided by a single arbitrator selected according to the Rules. The arbitrator will decide any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication and may grant any remedy or relief that a court could order or grant on similar motions. The arbitrator shall apply the provisions of this Representation Agreement without varying therefrom, and shall not have the power to add to, modify, or change any of the provisions hereof.

In any arbitration proceeding discovery will be permitted only in accordance with the terms of this paragraph. Discovery by each party shall be limited to: (i) a maximum number of five (5) depositions limited to four hours each; (ii) requests for production of documents; (iii) two interrogatories: one inquiring into the amount of damages sought by the other party and another into the calculation of those damages; and (iv) subpoenas upon third parties for production of documents, depositions, and to appear at a hearing. The scope of discovery may be expanded only upon the mutual consent of the parties. Discovery not set forth in this paragraph shall not be permitted.

**The Parties understand and agree that they are entering into this arbitration agreement voluntarily, and that by doing so they are waiving their rights to a jury trial or to have their claims otherwise litigated in court.**

Seller's Initials  *RHH*   Broker's Initials  *A*

12) **ATTORNEYS' FEES:** In any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, including Broker, the prevailing party shall be entitled to recover its costs, including costs of arbitration, and reasonable expert witness and attorneys' fees in addition to any other relief to which such party may be entitled.

13) **GOVERNING LAW:** Pennsylvania law and jurisdiction shall govern this Agreement and all non-waivable requirements of Broker under the Pennsylvania Real Estate Licensing and Registration Act ("RELRA") and Pennsylvania Real Estate Commission Regulations ("PREC Regulations") shall be incorporated herein by reference. Seller acknowledges (a) A Real Estate Recovery Fund exists in Pennsylvania to reimburse a person who has obtained a final civil judgment against a Commonwealth of Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting legal and equitable remedies. Details about the Fund may be obtained by calling the Pennsylvania Real Estate Commission at 717-783-3658. (b) If required by Pennsylvania Act 112, as amended by Act 125, a "Consumer Notice" of Broker's expertise, conditions of compliance, laws, and regulations applicable to the intended transaction has been given to Seller by Broker at the initial interview. (c) A financial interest notice in writing as required by RELRA has been given to Seller by Broker advising of any financial interest Broker has in the Property, settlement service providers, or any party having an interest in the Property, or will be given by Broker to Seller if such develops during the Term of this Agreement.

14) **DEPOSITS:** Broker, or any other person that Seller and Buyer name in the Purchase Agreement, shall keep all deposit monies paid by or for the Buyer in an escrow account pending consummation of the sale or a prior termination thereof. If held by Broker, Broker's escrow account will be maintained as required by RELRA and PREC Regulations. Seller agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Seller has accepted the related offer.

15) **COMMERCIAL REAL ESTATE BROKER LIEN ACT:** Seller acknowledges that, pursuant to the Pennsylvania Commercial Real Estate Broker Lien Act, Broker has a right to place a lien claim on Seller's sale proceeds in the amount of the compensation agreed upon in this Agreement upon the fulfillment of the conditions stated in this Agreement and to keep the lien in place until Broker's Commission, interest, costs and attorney's fees are paid or escrowed. This lien claim may be maintained during arbitration proceedings and arbitration may be utilized as an alternative to a civil action in a court of proper jurisdiction.

16) **NO DISCRIMINATION**: Federal and state laws make it illegal for Seller, Broker or anyone else to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILY STATUS (children under 18 years of age), AGE (40 or over), NATIONAL ORIGIN, or USE OR HANDLING/TRAINING OF SUPPORT OF GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale or lease of property. Seller and Broker agree to comply with the laws described in this paragraph in the sale or lease of the Property, and further agree to indemnify and hold each other harmless from all liability arising from the other's failure to comply with its obligations under this paragraph or any other such laws prohibiting discrimination.

17) **EXTENSION OF TERM**: If an agreement or letter of intent for the sale of the Property is executed by all necessary parties, and/or an escrow is opened, and if said agreement or letter of intent is revoked, rescinded or otherwise terminated, and/or the escrow account is subsequently canceled, the Term shall be extended by the number of calendar days during which the sale agreement or letter of intent was in effect or the escrow was open, whichever is longer. The maximum extension permitted hereunder shall be the number of days remaining on the Term from the date the sale agreement or letter of intent was executed, or an escrow opened, whichever event occurred earlier. Notwithstanding the foregoing, this Representation Agreement shall expire in all cases no later than nine (9) months after the original termination date stated above. The purpose of this extension provision is to allow Broker the opportunity to expose the Property to the marketplace for the full period of time contemplated by this Agreement.

18) **MARKETING**: Client understands and agrees that Broker and its affiliates and assigns may issue marketing, press releases, tombstones and/or advertising concerning the transaction. Information released typically will include the sales price, name and service marks of Client, property description, and location.

19) **OTHER TERMS AND CONDITIONS:**

   A) <u>This listing agreement and any sale is subject to Bankruptcy Court Approval.</u>

   B) <u>Marcus and Millichap was initially engaged by Tioga Fuel Inc. on February 7, 2025 and Listed the property as of that time and solicited interest from various buyers since that date.</u>

SELLER UNDERSTANDS AND ACKNOWLEDGES THAT BROKER IS NOT QUALIFIED TO PROVIDE, AND HAS NOT BEEN CONTRACTED TO PROVIDE, LEGAL, FINANCIAL OR TAX ADVICE, AND THAT ANY SUCH ADVICE MUST BE OBTAINED FROM SELLER'S ATTORNEY, ACCOUNTANT OR TAX PROFESSIONAL. THE PARTIES ARE ADVISED TO CONSULT WITH THEIR RESPECTIVE ATTORNEYS CONCERNING THE LEGAL EFFECT AND VALIDITY OF THIS AGREEMENT PRIOR TO ITS EXECUTION.

SELLER NAME: <u>Robert H. Holer</u>    SELLER'S SIGNATURE: *Robert H. Holber* (DocuSigned)

DATE: 9/4/2025 | 13:15:07 PDT    Address: <u>41 e. Front Street Media, PA 19063</u>

BROKER NAME: <u>Timothy Stephenson</u>    BROKER'S SIGNATURE: (DocuSigned)

DATE: 9/4/2025 | 13:02:54 PDT    Address: <u>2005 Market Street Philadelphia, PA 19102</u>

Seller's Initials: RHH    Broker's Initials: TS