**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re:

TIOGA FUEL COMPANY INC.,

Debtor.

Chapter 7

Case No. 25-12706-DJB

**MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER**
**APPROVING SALE OF REAL PROPERTY FREE AND**
**CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

Robert H. Holber, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Tioga

Fuel Company Inc. (the "Debtor") by and through his undersigned counsel, hereby files this

Motion for an Order Approving Sale of Real Property Free and Clear of Liens, Claims, and

Encumbrances (the "Motion") and in support thereof, and respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 18 U.S.C. §§ 157 and

1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The legal predicates for

the relief sought herein are Sections 522 and 554 of the Bankruptcy Code.

**FACTUAL BACKGROUND**

3. On July 7, 2025, the Debtor filed a voluntary petition for relief under Chapter 7 of

Title 11 of the United States Code (the "Bankruptcy Code").

4. Thereafter, the Office of the United States Trustee appointed Robert H. Holber as

Chapter 7 Trustee of the Debtor's estate.

5. The Debtor owns real property located at: (i) 3521 Tulip Street; (ii) 3501 Tulip

Street and (iii) 3550R-98 Aramingo Avenue, Philadelphia, PA (the "Property").

15522932 v1

6.     The Property is an approximately 4,400 square foot warehouse with a land area of 44,733 square feet in Philadelphia.

7.     On September 8, 2025, the Trustee filed a motion to employ Marus & Millichap (the "Broker") in connection with the listing of the Property [Docket No. 18], and it was approved by the Bankruptcy Court on September 23, 2025 [Docket No. 27]. Timothy B. Stephenson, Jr. is the listing agent at Marcus & Millichap for the property.

8.     The Application provides for a commission of 5% of the Purchase Price.

9.     The Property was originally listed for the asking price of $1,000,000 before the Petition Date.

10.     After an extensive marketing process, Marcus & Millichap located Lucas Sowa (the "Initial Buyer") as the buyer for the Property for $750,000.

11.     On September 26, 2025, a Sale Motion was filed [Docket No. 35] seeking approval of the $750,000 purchase price.

12.     On November 14, 2025, an Addendum to Purchase Agreement was filed changing the buyer entity to Lewis Bro LLC [Docket No. 58].

13.     A revised form of order seeking approval of the $750,000 purchase price with Lewis Bro LLC was filed on December 2, 2025 [Docket No. 63].  The revised order approving the initial sale was entered on December 3, 2025 [Docket No. 64] (the "Initial Sale Order").

14.     An addendum to the Initial Purchase Agreement was filed on January 16, 2026 [Docket No. 67] changing the escrow date.

15.     Unfortunately, the Initial Buyer defaulted on their agreement, refused to close and since has failed to respond to all subsequent inquiries by the Broker.

16.     Therefore, the Trustee seeks to vacate the Initial Sale Order.

15522932 v1

17.     Since the default of the Initial Buyer, the Broker has reassessed the Property and has determined that the market value of the Property was far less than as the first buyer had offered (that overpayment may have contributed to their default). The Broker further speculated that the primary reason that the previous buyer was willing to pay such a premium was that he was planning on using the site in its current capacity as a fuel depot.

18.     As a result of the Initial Buyer's default, the Trustee, in consultation with the Debtor's secured lender (Citizens Bank), requested that the Broker reassess its sales strategy.

19.     On February 14, 2026, the Broker prepared a detailed sales analysis (the "Sale Analysis"). The Sale Analysis reflected their sentiments on the Property and likely trade price given market feedback as well as updated comparables less the environmental concerns. The Broker's Sale Analysis considered comparables, applicable cap-rates and projected cash on cash returns for prospective investors. As a result, the Broker opined that that the Property should be valued at $525,000 to $375,000.

20.     The Trustee shared the Broker's Sale Analysis with Citizens Bank to ensure that the bank wanted to proceed with a Trustee sale of the Property and continue to honor the previously negotiated carve-out as provided in the Motion of the Chapter 7 Trustee for an Order Authorizing Carve-Outs for the Benefit of the Estate [Docket No. 44].

21.     Citizens accepted the Broker's new marketing approach and value for the Property.  Further, in light of the lower sale price proposed herein, the Trustee and Citizens agreed to lower the Carve-Out remaining to be paid from this sale $80k (instead of $91k).

22.     Thereafter, the Broker went back out to market to search for alternative buyers for the Property.

15522932 v1

23.     On or about April 10, 2026, the Trustee entered into a Purchase Agreement (the "Purchase Agreement") with Bakhshish Sandhu as the new buyer (the "Buyer") for the Property for the purchase price of $475,000.  The Purchase Agreement is attached hereto as Exhibit "A."

24.     The Buyer is required to make a $50,000 deposit to the escrow agent and, as of the date hereof, has done so.

25.     After the due-diligence period as provided in the Purchase Agreement has expired, the Buyer will have agreed to accept the Property on an as-is where-is basis.

26.     The Buyer has waived all further inspection and financing contingencies.

27.     The Sale is subject to higher and better offers from third parties.  Competing offers, if any, will be due in writing to the Trustee on the date of sale objection deadline.  Unless and until any higher and better offer with an alternate purchaser is approved and consummated by the Trustee, the Buyer will continue to remain obligated on the Purchase Agreement.

28.     The Broker has agreed to a commission of 5% of the Purchase.

29.     The Sale is subject to approval by this Court and expressly contingent upon such approval.

## RELIEF REQUESTED

30.     The Trustee seeks authority to consummate the Purchase Agreement and sell the Property to the Buyer for $475,000.

31.     The Trustee also requests that this sale be free and clear of all liens, claims, and encumbrances.  In accordance with the title report, there are no mortgages on the property.

32.     Subject to the Trustee's review of the validity, extent and priority of any mortgages, if any, these will either be paid at the closing of the sale or such liens will attach to the proceeds of the sale and will be paid pursuant to further Order of this Court.

15522932 v1

33.     As to any federal and state tax liens, under Section 724 of the Bankruptcy Code, a trustee may avoid or subordinate valid tax liens to the costs of administration, Trustee's commission and certain other unsecured priority claims.  These provisions allow certain unsecured priority claimants "to step into the shoes of the tax collector" and receive distribution from property of the estate before valid tax claims despite the fact that the tax claim could be properly allowed and secured.

34.     The Trustee seeks the subordination or avoidance of any federal and state tax liens in connection with the sale of the Property under 11 U.S.C. § 724.  However, any such taxes shall be allowed as priority unsecured claims for the amount of any such claim that remains unpaid.

35.     Accordingly, the sale of the Property should be free and clear of all liens, claims, encumbrances against the Property, including any mortgages or any federal and state tax liens.

36.     The Trustee believes that the price being offered for the Property is both fair and reasonable.  The Property has been fully marketed and the sales price is within the appropriate range of value based on the information the Trustee and the Broker has available.

37.     Nevertheless, the Trustee is providing creditors and parties in interest with notice of this Motion to alert and potentially stimulate any other interested bidders.  Overall, the Trustee does not believe that formal bid procedures or an auction is necessary nor would it be cost effective here, especially given the marketing efforts already undertaken here.  The Trustee acknowledges, however, that in the event that any other interested party should be located, they would be entitled to step forward to offer a higher and better price.

38.     To the best of the Trustee's knowledge and belief, the Buyer is not an insider of the Debtor.

15522932 v1

39.     It is the Trustee's understanding that the sale to the Buyer is an arms' length transaction in every sense.

40.     The Trustee is serving this Motion on all creditors and parties in interest.   The Trustee suggests that any interested bidder present an offer which is higher and better for the Property prior to the objection deadline.  If such an alternate purchaser surfaces, the Trustee will certainly enter into an enhanced sale agreement.

41.     The Trustee is serving this Motion on all entities that appear on a title report for the Property.

42.     Absent such objection or other competition materializing, the Trustee respectfully requests that this Court enter an Order approving the Sale to the Buyer pursuant to the AoS.

43.     Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Moreover, Section 105(a) of the Bankruptcy Code provides that the bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

44.     Bankruptcy courts are given a great deal of discretion when deciding whether to authorize a sale of a Debtor's assets outside of the ordinary course of business. See In re Chateaugay Corp., 973 F.2d 141, 144 (2d Cir. 1993). Under applicable legal standards, approval of a sale is appropriate if the Court finds that the transaction represents a reasonable business judgment on the part of the Trustee. See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); Stephens Indus., Inc. v. McClung, 789 F.2d

15522932 v1

386, 390 (6th Cir. 1986); In re Industry Valley Refrigeration & Air Conditioner Supplies. Inc.,

77 B.R. 15 (Bankr. E.D. Pa. 1987).

45.     Courts have made it clear that a showing of a sound business justification need

not be unduly exhaustive but, rather, a trustee is "simply required to justify the proposed

disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr.

S.D. Ohio 1984).  Whether there are sufficient business reasons to justify a sale depends upon

the facts and circumstances of each case.  See Lionel, 722 F.2d at 1071.

46.     In determining whether a sale satisfies the business judgment standard, courts in

this Circuit require: (a) that there be a sound business reason for the sale; (b) that accurate and

reasonable notice of the sale be given; (c) that the sale yield an adequate price, i.e., one that is

fair and reasonable; and (d) that the parties to the sale have acted in good faith.  In re Titusville

Country Club. 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

47.     In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the

ordinary course of business may be by private sale or by public auction.  See Fed. R. Bankr. P.

6004(f)(1).  Subject to Bankruptcy Rule 6004, the notice of a proposed use, sale or lease of

property required under Bankruptcy Rule 2002(a)(2) must include the terms and conditions of

any private sale, and the time fixed for filing objections.  See Fed. R. Bankr. P. 2002(c)(1).

Moreover, the notice of a proposed use, sale or lease of property is sufficient if it generally

describes the property to be sold.  Id.  Courts have also permitted "word of mouth" transactions

to constitute accurate and reasonable notice of a sale. See Industrial Refrigeration, 77 B.R. 15, 22

(Bankr. E.D. Pa. 1987).

48.     The Trustee submits that, under the circumstances of this case, the sale process

described above will produce an appropriate return to the bankruptcy estate for the Property.

15522932 v1

Further, the notice and procedures set forth in this Motion satisfy the notice requirements of the

Bankruptcy Rules and section 363(b) of the Bankruptcy Code, constitute good and sufficient

notice, and that no other or further notice is required.

49.	Moreover, the Trustee believes that the price that the Buyer will pay for the

Property is fair and adequate.  Therefore, the Buyer is entitled to the protection of Section

363(m) of the Bankruptcy Code free and clear of liens and encumbrances.

WHEREFORE, the Trustee respectfully requests that this Court enter an order: (i)

approving the sale of the Property free and clear of all liens and encumbrances; and (ii) granting

any other relief that this Court deems just and proper.


Dated: April 15, 2026                                    **FLASTER/GREENBERG P.C.**

By:	*/s/ William J. Burnett*
William J. Burnett, Esquire
1717 Arch Street, Suite 3300
Philadelphia, PA 19103
Telephone 215-279-9383
Facsimile 215-279-9394

*Counsel for Robert H. Holber,*
*Chapter 7 Trustee*


15522932 v1