Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A2A4B4

# Marcus & Millichap

## REAL ESTATE PURCHASE AGREEMENT

**THIS DOCUMENT IS MORE THAN A RECEIPT FOR MONEY. THIS DOCUMENT IS INTENDED TO BE A LEGALLY BINDING CONTRACT. READ IT CAREFULLY.**

Marcus & Millichap Real Estate Investment Services ("Agent") has received **from Bakhshish Sandhu or another entity to be formed("Buyer")** the sum of **Fifty Thousand Dollars ($50,000.00)** in the form of a <u>Wire or Certified</u> check made payable to (select one with an "X") [_] Agent, or [X] Closing Agent as defined in Paragraph 4 below. This sum, and any interest earned thereon, is a deposit ("Deposit") to be applied to the purchase price of that certain real property and improvements referred to as **3521 Tulip Street, 3501 Tulip Street, 3550R-98 Aramingo Avenue, Philadelphia, PA 19134** (the "Property) and more particularly described as follows:

Street Address: **3521 Tulip Street, 3501 Tulip Street, 3550R-98 Aramingo Avenue,**
State: **PA**      Zip: **19134**      County: **Philadelphia**
APN: **884349760, 884349755, 885809300**
Zoning Classification: **ICMX& CA2**
Description: **A .90 AC Lot with a 3200SF Structure.**

The Property shall also include Seller's interests in:
1. Any and all privileges and appurtenances pertaining to the Property, including any right, title and interest of Seller in or to adjacent streets, alleys or right(s)-of-way;
2. Any and all leases, licenses, occupancy agreements, permits, rents, warranties, guarantees or security deposits with respect to the Property, or any portion thereof;
3. Any and all trade names used in connection with the Property.

## TERMS AND CONDITIONS

For the mutual covenants contained in this Real Estate Purchase Agreement ("Agreement"), Seller agrees to convey the Property to Buyer, and Buyer agrees to purchase the Property from Seller, on the following terms and conditions:

1) **PURCHASE PRICE.** The total purchase price for the Property **is Four Hundred Seventy Five Thousand Dollars ($475,000) ("Purchase Price").**

2.1) **DEPOSIT.** The Deposit shall be credited to the Purchase Price of the Property at the Closing Date (as defined in Paragraph 4 below) of this Agreement, and shall be held by (select one with an "X") [_] Agent, or [X] Closing Agent as defined in Paragraph 4 below, in trust for the benefit of the parties in an escrow account (the "Deposit Account") at a banking institution designated by Agent or Closing Agent, as the case may be, unless otherwise instructed by the Buyer and Seller in writing. The entire Deposit shall be credited to the Purchase Price at the Closing Date, unless otherwise provided herein. It is agreed between all parties hereto that if Agent is selected to hold the Deposit, Agent will hold the Deposit in a non-interest bearing trust account until Closing or until this Agreement is terminated prior thereto because of the default of either party or by voluntary agreement; and if any dispute should arise between Buyer and Seller as to the final disposition of said Deposit, Agent may institute a suit to determine who is entitled to said Deposit, and the cost of said action, including reasonable attorney's fees incurred by Agent shall be paid out of said Deposit. If this Agreement is voided by Buyer for any reason permitted under this Agreement, Agent shall refund the Deposit to Buyer, and no party hereto shall have any further rights to said Deposit.

Initial
BSS
**Buyer's Initials** _____ **Seller's Initials** _____
Copyright Marcus & Millichap 2022

2.2)    ~~DEPOSIT INCREASE.    With the removal of the contingencies set forth in Paragraphs~~
~~_____ hereof, Buyer shall increase the total Deposit in the Deposit Account to~~
~~_____ Buyer's failure to timely increase the~~
~~total Deposit as required hereunder shall be a material breach of this Agreement.~~

2.3)    **DEPOSIT TRANSFER.** Buyer's Deposit shall remain in trust until removal of the contingencies set forth in Paragraphs <u>9.1 & 9.2 & 9.3</u> hereof. Upon removal of said contingencies: (a) Buyer's Deposit shall be non-refundable; (b) the Deposit Account shall remain subject to the remaining terms and conditions of this Agreement; and, (c) upon the written instruction of Seller, the Deposit Account shall be transferred to the Seller. Seller shall hold Buyer's Deposit subject to the remaining terms and conditions of this Agreement. Buyer acknowledges and agrees that, in the event Buyer defaults on this Agreement after removal of contingencies, Buyer's Deposit is non-refundable and is forfeited to Seller. If the Property is made unmarketable by Seller or Seller defaults on this Agreement, the Deposit must immediately be returned to Buyer and the deed shall be returned to Seller. Notwithstanding the foregoing, no party shall be liable or responsible to the other party, nor be deemed to have defaulted under or breached this Agreement, for any failure or delay in fulfilling or performing any term of this Agreement when, and to the extent, such failure or delay is caused by or results from one or more of the following force majeure events ("Force Majeure Events"), so long as the Force Majeure Event is beyond the reasonable control of the party impacted by it (the "Impacted Party"): (a) acts of God such as hurricane, flood, earthquake, tornado, fire, avalanche, or tsunami; (b) war, invasion, armed conflict (whether war is declared or not), terrorist threats or acts, riot, or other civil unrest; (c) epidemics, pandemics, or government-mandated quarantines or stay-at-home orders (excluding recurrences of prior epidemics, pandemics, or quarantines or stay-at-home orders); or (d) government law, regulation, order, or other action. In such a Force Majeure Event, the Impacted Party must provide written notice to all other parties to this Agreement demonstrating that the Force Majeure Event has rendered performance of the Impacted Party's obligations under this Agreement impossible. Upon service of such written notice in accordance with the notice provisions of this Agreement, this Agreement shall be deemed terminated at no fault to either party. If Buyer, as the Impacted Party, timely serves such written notice upon all other parties within five (5) calendar days of the Force Majeure Event rendering performance of the Buyer's obligations impossible, then the Deposit shall be immediately refunded to Buyer; otherwise, Seller shall be entitled to retain the Deposit.

3)      **BALANCE OF PURCHASE PRICE.** At the Closing Date, Buyer shall pay the balance of the Purchase Price (i.e., the Purchase Price less the Deposit) subject to adjustments and apportionments set forth in this Agreement, by certified check, bank check, title insurance company check or wire transfer of immediately available federal funds.

4)      **CLOSING.** Closing shall be held ~~on or before _____, 202_ (the "Closing Date")~~ **7 Days or sooner upon the Expiration of Due Diligence Period**, at the office of **World Wide Land Transfer** ("Closing Agent") located <u>at: **8 Interplex Drive, Suite 117, Trevose, PA 19053**, unless ot</u>herwise agreed in writing by Seller and Buyer, at the time designated by written notice from Closing Agent to Seller, Buyer and Agent at least five (5) days prior to the Closing Date. At the Closing, Seller shall execute and deliver to Buyer a special warranty deed subject to those exceptions permitted by this Agreement, and an Internal Revenue code Section 1445 non-foreign affidavit, all in form satisfactory to the Title Company (as defined in Paragraph 6 below). Each party hereto shall execute and deliver such other documents as are necessary or appropriate to effect and complete the Closing.

5)      **PRORATIONS.** Real Property Transfer taxes shall be paid and shared equally by Buyer and Seller. Other real property taxes and assessments, rents, premiums on insurance acceptable to Buyer, interest on any debt being assumed or taken subject to by Buyer, and any other income or expenses of the Property shall be prorated as of the Closing Date, or as otherwise agreed to by Seller and Buyer. Security deposits, advance rentals, and the amount of any future lease credits shall be credited to Buyer, or as otherwise agreed to by Seller and Buyer.

6)      **TITLE.** Buyer at Buyer's expense shall cause an examination of title to the Property to be made, and a title insurance commitment to be issued by **World Wide Land Transfer** (the "Title Company") on

3401 Tulip Street PSA                    2 of 12           **Buyer's Initials** _BSS_ **Seller's Initials** _MM_
                                                                          Copyright Marcus & Millichap 2022

the Property. At Buyer's option and expense, Buyer may cause an accurate survey to be made of the Property by a registered land surveyor of Buyer's choice. Within fifteen (15) calendar days after the Effective Date (as defined in Paragraph 33 below) of this Agreement, Buyer shall deliver a copy of the title commitment to Seller, together with a copy of any survey Buyer shall have prepared, accompanied by a letter to Seller in which Buyer shall either approve in writing the exceptions contained in said title report or specify in writing any exceptions to which Buyer reasonably objects. If Buyer objects to any exceptions, Seller shall, within five (5) calendar days after receipt of Buyer's objections, deliver to Buyer written notice that either (a) Seller will, at Seller's expense, attempt to remove the exception(s) to which Buyer has objected before the Closing Date or (b) Seller is unwilling or unable to eliminate the exception(s). If Seller fails to so notify Buyer or is unwilling or unable to remove any such exception by the Closing Date, Buyer may elect to terminate this Agreement and receive back the entire Deposit, in which event Buyer and Seller shall have no further obligations under this Agreement; or, alternatively, Buyer may elect to purchase the Property subject to such exception(s).

Seller shall convey to Buyer (or to such other person or entity as Buyer may specify) marketable title by fee simple deed of special warranty to the Property subject only to the exceptions approved or accepted by Buyer in accordance with this Agreement. Title shall be insured by an A.L.T.A. fee owner's policy of title insurance issued by the Title Company in the amount of the Purchase Price with the premium paid by Buyer.

7) ~~FINANCING CONTINGENCY, NEW FIRST LOAN. Buyer shall use Buyer's best efforts, at Buyer's expense, to obtain a new first loan ("First Loan") in the amount of no more than_____, to bear interest at origination of not more than ____percent (__%) per year (select one with an "X") [X] fixed rate [_] other _____, payable monthly in an initial amount not to exceed __)), and to be due in no less than ) years, with any loan fee not to exceed_____). The First Loan shall be secured by a new first mortgage on the Property. Buyer shall submit a written application to obtain the First Loan to a bona fide lender within Thirty (30) calendar days of the Effective Date and shall comply with lender's application requirements. Buyer shall authorize said lender to disclose to Agent and Seller the status of the loan application review and approval upon request. If Buyer fails to apply as required hereinabove, or if Buyer fails to notify Seller in writing that Buyer has obtained the First Loan within thirty (30) calendar days of the Effective Date, this Agreement shall be rendered null and void whereupon all Deposits shall be returned to Buyer, and Buyer and Seller shall have no further obligations under this Agreement. Seller shall pay any pre-payment penalties, if any, on any existing financing of Seller not taken subject to or assumed by Buyer.~~

8.1) ~~PEST CONTROL CONTINGENCY. The improvements on the Property shall be inspected by a licensed pest control operator who shall prepare a termite and fungus inspection report for delivery to Buyer within ten (10) calendar days following the Effective Date. This pest control inspection and report shall be ordered and paid for by Buyer. Any additional inspections by other experts recommended by said report that Buyer elects to perform, shall be ordered and paid by Buyer. The cost of any corrective repairs shall be paid by Seller up to a maximum of One Thousand Dollars ($1,000). In the event the cost of these repairs exceeds the specified maximum of Seller's obligation hereunder, Seller shall have the option to pay the extra costs, or cancel this Agreement in which event the parties shall have no further obligations under this Agreement and all Deposits shall be returned to Buyer; provided, however, that the Agreement shall remain in effect if Buyer elects to pay or waive the extra cost of any corrective repairs and so advises Seller in writing. Notwithstanding anything herein to the contrary, Seller shall not be responsible for any work recommended to correct conditions usually deemed only likely to lead to infestation or infection by wood-destroying pests or organisms, or merely cosmetic repairs, provided there is no evidence of active infestation or infection found in connection with such conditions.~~

8.2) **NO PEST CONTROL CONTINGENCY.** Buyer hereby understands and acknowledges that Buyer has conducted Buyer's own investigation with regard to possible infestation and/or infection by wood-destroying pests or organisms, in addition to any other pests, and Buyer hereby agrees to purchase the Property in its existing "AS IS" condition, without warranty of any kind as to infestation

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A24184

OK and/or infection by wood-destroying pests or organisms or other pests. Buyer hereby acknowledges that Buyer is not relying upon any representations or warranties made by either Seller or Agent regarding the presence or absence of such infestation, infection or pests.

**9)      INSPECTION CONTINGENCIES**

**9.1)     ~~BOOKS AND RECORDS. Seller agrees to provide Buyer with the items listed below, if applicable, within five (5) calendar days following the Effective Date:~~**

~~a. All rental agreements, leases, licenses, management agreements, maintenance or service contracts, insurance policies, commitments, latest tax and assessment bill(s) and other written agreements or notices which affect the Property.~~

~~b. The operating statements of the property for twenty-four (24) calendar months immediately preceding the Effective Date of this Agreement.~~

~~c. All documents Seller may have regarding the financial condition, business prospects or prospective continued occupancy of any occupant (including but not limited to financial statements, credit reports, etc.).~~

~~d. All notes, deeds of trust, or other security instruments affecting the Property.~~

~~e. A complete and current rent roll, including a schedule of all occupant deposits and fees.~~

~~f. A written inventory of all items of Personal Property to be conveyed to Buyer on the Closing Date.~~

~~g. All drawings, specifications, site plans, surveys, engineering studies or soil reports for the property in Seller's possession or control.~~

~~h. The following items, if readily available to Seller:~~

~~_____.~~

~~Buyer shall acknowledge receipt of these items in writing. Within Five (5) calendar days of the Effective Date, Buyer shall review and approve in writing each of these items. If Buyer fails to timely approve each of these items, Seller, at Seller's option and in Seller's sole discretion, may declare this Agreement null and void whereupon all Deposits shall be returned to Buyer, and Buyer and Seller shall have no further obligations under this Agreement.~~

**9.2)     INSPECTION OF PROPERTY.** Within <u>Twenty One Days (21)</u> calendar days of the Effective Date, Buyer shall inspect and approve the "AS IS" condition of the Property, including, but not limited to its physical condition, the quality of any construction, the soil conditions, and the presence or absence of lead- based paint or other hazardous materials on or about the Property, and to notify the Seller in writing that Buyer approves the "AS IS" condition of the Property. If Buyer fails to timely approve the condition of the Property, Seller, at Seller's option and in Seller's sole discretion, may declare this Agreement null and void whereupon all Deposits shall be returned to Buyer, and Buyer and Seller shall have no further obligations under this Agreement.

**9.3)     COMPLIANCE WITH LAWS.** Within <u>Fifteen (15)</u> calendar days of the Effective Date, Buyer shall investigate and notify Seller in writing of Buyer's acceptance and approval of Federal, State and local laws and ordinances addressing whether the Property must be brought into compliance with any such laws including but not limited to any minimum energy conservation, access, safety standards, or similar retrofit requirements as a condition of sale or transfer. If approved by Buyer, Buyer shall comply with and pay for these compliance requirements. If Buyer fails to timely approve any compliance requirement, if any, Seller, at Seller's option and in Seller's sole discretion, may declare this Agreement null and void whereupon all Deposits shall be returned to Buyer, and Buyer and Seller shall have no further obligations under this Agreement.

**9.4)     ~~TENANT FINANCIAL INFORMATION (Commercial Leased Properties). Within twenty-five (25) calendar days of the Effective Date, Buyer shall investigate and approve the financial condition, business prospects and prospective continued occupancy of any tenant, licensee or other occupant of the Property in writing to Seller. Seller shall cooperate with Buyer and shall provide Buyer in writing with all such information in Seller's possession, but shall not be responsible for the refusal of any occupant of the Property to provide such information. If Buyer fails to timely approve any of the foregoing Tenant Financial Information as described herein, Seller, at Seller's option and in Seller's sole discretion, may declare this Agreement null and void whereupon all Deposits shall be returned to Buyer, and Buyer and Seller shall have no further obligations under this Agreement. On or before the Closing Date, Seller shall either (a) confirm to Buyer in writing that Seller has no~~**

Initial
BSS

Copyright Marcus & Millichap 2022

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A241B4

~~further information regarding the financial condition, business prospects or prospective continued occupancy of any tenant, licensee or other occupant not previously provided to Buyer, or (b) provide Buyer with a written update of any such information; however, no facts arising or first coming to Seller's attention after Buyer's removal of this Tenant Financial Information contingency shall relieve Buyer of its obligations under this Agreement.~~

9.5) ~~**NO INSPECTION CONTINGENCY.** This Agreement is not subject to any inspection contingencies whatsoever. Buyer warrants and acknowledges that Buyer is knowledgeable in real estate matters and has completed all investigations and inspections which Buyer deems necessary and appropriate concerning Buyer's purchase of the Property in its "AS IS" condition, without warranty of any kind, and without any further inspection contingency. Buyer hereby acknowledges that Buyer is not relying on any representation by either Seller or Agent in electing to waive all inspection contingencies and purchase the Property "AS IS".~~

10.1) ~~**ESTOPPEL CERTIFICATES** (Commercial Leased Properties).~~
~~Seller shall obtain and deliver to Buyer, within fifteen (15) calendar days (select one with an "X")~~
  ~~[__]  after the last contingency set forth in Paragraphs _____ of this Agreement is removed,~~
  ~~[__]  of the anticipated Closing Date set forth in Paragraph 4,~~
  ~~[__]  of the Effective Date,~~
~~estoppel letters or certificates from each tenant, licensee or other occupant at the Property stating: (a) the date of commencement and the scheduled date of termination of their lease, license or occupancy agreement; (b) the amount of any advanced payments, rents and rent deposits paid to Seller; (c) the amount of monthly (or other periodic) payments to Seller; (d) that the lease, license or other occupancy agreement is in full force and effect and that there have been no modifications or amendments thereto, or, if there have been any modifications or amendments, a complete explanation of same; (e) the approximate square footage of the space within the Property they occupy (if set forth in any agreement); and (f) that there is no default under the terms of the lease, license or other occupancy agreement by Seller or Seller's agents. Buyer shall have five (5) calendar days after receipt of the estoppel letters or certificates to approve the same. Buyer may only disapprove said estoppel letters and certificates, and cancel this Agreement, if the letters and certificates: (i) reflect a discrepancy from any documentation previously provided by Seller, not already discovered by Buyer, and materially affects the economics of this Agreement, or, (ii) reveal a previously undisclosed material breach of one of the leases, licenses or other occupancy agreements. Upon such reasonable disapproval, this Agreement shall be rendered null and void, Buyer and Seller shall have no further obligations hereunder, and all Deposits shall be returned to Buyer.~~

10.2) **ESTOPPEL CERTIFICATES NOT APPLICABLE** (Commercial Leased Properties). Buyer and Seller agree that estoppel certificates from the Property's occupants are not required as part of this Agreement. Buyer shall satisfy itself with the status of any occupancy agreements, if any, as part of Buyer's own due diligence investigation.

11) ~~**LEAD-BASED PAINT HAZARDS** (Property with Residential Units Only). Every purchaser of any interest in residential real property including multiple dwelling units on which a residential dwelling was built prior to 1978 must be notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing, without limitation, lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including but not limited to learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. (SELLER MUST INITIAL EITHER (a) OR (b) BELOW): (Property with Residential Units Only). Every purchaser of any interest in residential real property including multiple dwelling units on which a residential dwelling was built prior to 1978 must be notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing, without limitation, lead~~ poisoning. Lead poisoning in young children may produce permanent neurological damage, including but not limited to learning disabilities, reduced

Buyer's Initials __BSS__  Seller's Initials __MM__

Copyright Marcus & Millichap 2022

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A

~~intelligence quotient, behavioral problems and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. (SELLER MUST INITIAL EITHER (a) OR (b) BELOW):~~
~~[__] (a)  Seller warrants that the Property was constructed after 1978.~~
~~[X] (b)  Seller is not sure when the Property was constructed and/or has reason to believe that lead-based paint hazards may be present ("LEAD-BASED PAINT DISCLOSURE ADDENDUM" MUST BE ATTACHED TO THIS PURCHASE AGREEMENT).~~

12) **PERSONAL PROPERTY.** Title to any personal property to be conveyed to Buyer in connection with the sale of the Property shall be conveyed to Buyer by Bill of Sale on the Closing Date free and clear of all encumbrances (except those approved by Buyer as provided herein). The price of these items shall be included in the Purchase Price for the Property. Buyer agrees to accept all such personal property in its "AS IS" condition, without warranty of any kind. Buyer acknowledges and agrees that Buyer is not relying upon any representation or warranties, express or implied, made by Seller or Agent, in electing to waive all inspection contingencies and enter into this Agreement to acquire the Property hereunder.

13) **SELLER EXCHANGE.** Buyer agrees to cooperate should Seller elect to sell the Property as part of a like-kind exchange under IRC Section 1031. Seller's contemplated exchange shall not impose upon Buyer any additional liability or financial obligation, and Seller agrees to hold Buyer harmless from any liability that might arise from such exchange. This Agreement is not subject to or contingent upon Seller's ability to acquire a suitable exchange property or effectuate an exchange. In the event any exchange contemplated by Seller should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

14) **BUYER EXCHANGE.** Seller agrees to cooperate should Buyer elect to purchase the Property as part of a like-kind exchange under IRC Section 1031. Buyer's contemplated exchange shall not impose upon Seller any additional liability or financial obligation, and Buyer agrees to hold Seller harmless from any liability that might arise from such exchange. This Agreement is not subject to or contingent upon Buyer's ability to dispose of its exchange property or effectuate an exchange. In the event any exchange contemplated by Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

15) **"AS IS" CONDITION OF PROPERTY.** Buyer and Seller understand and agree that the Property is being conveyed to Buyer hereunder in its "AS IS" condition. Seller acknowledges and Buyer agrees that Buyer has or will have inspected and approved the Property in its "AS IS" condition prior to the Closing Date. Buyer further acknowledges and agrees that Agent has not made or makes any representation or warranty of any kind including but not limited to the condition or value of the Property, or its suitability for Buyer's intended use, upon which Buyer is relying in executing this Agreement and purchasing the Property hereunder. Buyer acknowledges and agrees that Buyer shall perform any and all due diligence required by Buyer to purchase the Property in its "AS IS" condition under this Agreement.

Buyer's Initials: ⎡Initial
⎣ BSS

16) **RISK OF LOSS.** Risk of loss to the Property shall be borne by Seller until title has been conveyed to Buyer or Buyer's designee. In the event that the improvements on the Property are destroyed or materially damaged between the Effective Date of this Agreement and the Closing Date, Buyer shall have the option of demanding and receiving back the Deposit, with the parties being released from all obligations of this Agreement, or, alternatively, taking such improvements as Seller can deliver. Upon Buyer's removal of all inspection contingencies set forth in this Agreement relating to the condition of the Property, Seller shall maintain the Property through the Closing Date in substantially the same condition and repair as approved by Buyer, reasonable wear and tear excepted.

**Buyer's Initials** ⎡Initial ⎣ BSS  **Seller's Initials** *Mm*
Copyright Marcus & Millichap 2022

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A24741

17) **POSSESSION.** Possession of the Property shall be delivered to Buyer on the Closing Date, subject to any and all existing possession rights of any tenants, invitees, licensees or other occupants, if any.

18) **LIQUIDATED DAMAGES / NON-REFUNDABLE DEPOSIT UPON CONTINGENCIES REMOVALS.** Upon the removal of Buyer's contingencies set forth at Paragraphs 9.1 & 9.2 & 9.3 of this Agreement, all Deposits hereunder shall become non-refundable in the event of a default by Buyer. Buyer and Seller agree that it would be impracticable or extremely difficult to fix actual damages to Seller in the event of a default by Buyer. Accordingly, Buyer and Seller hereby agree that the amount of all Buyer's Deposits hereunder (as the same may be increased by the terms hereof) is the parties' reasonable estimate of Seller's damages in the event of Buyer's default. Buyer and Seller further agree that upon Buyer's default in any of its obligations under this Agreement or other failure of Buyer to complete this Agreement not caused by any breach by Seller, Seller shall be released from all obligations to convey the Property to Buyer under this Agreement, and Seller shall retain Buyer's Deposit (as same may be increased by the terms hereof) as liquidated damages, which shall be Seller's sole and exclusive remedy in law or at equity for Buyer's default.

19) **AUTHORIZATION.** Buyer and Seller authorize Agent to disseminate sales information regarding this transaction, including the Purchase Price of the Property.

20) **DISCLOSURE OF REAL ESTATE LICENSURE.**

20.1) ~~The Buyer (select one with an "X") is not [ ] / is [ ] a licensed real estate agent associated with _____, a real estate broker licensed in the state of _____, but in this transaction is acting as a principal.~~

20.2) ~~The Seller (select one with an "X") is not [ ] is [ ] a licensed real estate agent associated with _____, a real estate broker licensed in the state of _____, but in this transaction is acting as a principal.~~

21) **AGENCY DISCLOSURE.** (choose only ONE of the following:)

[] EXCLUSIVE LISTING: Agent is the exclusive listing broker of the property that is the subject of this transaction. Under Pennsylvania law, Agent represents the Seller as the Seller's agent only. Agent also has procured the Buyer in this transaction. However, Agent is not the agent of the Buyer.

[ ] SELLER'S AGENT: Agent is the broker representing the Seller (and the Seller only) in this transaction. _____ is the broker representing the Buyer (and the Buyer only).

[ ] BUYER'S AGENT: Agent is the broker representing the Buyer (and the Buyer only) in this transaction. _____ is the broker representing the Seller (and the Seller only).

[X] DUAL AGENCY: Seller and Buyer understand that Agent represents both Seller and Buyer in the sale of the Property. Both Buyer and Seller hereby confirm their respective authorization of Agent to act as a dual agent to both Buyer and Seller in this transaction. Both Buyer and Seller consent to such dual representation.

22) **OTHER BROKERS.** Buyer and Seller agree that, in the event any broker, other than Agent or a broker affiliated with Agent, is involved in the disposition of the Property, Agent shall have no liability to Buyer, Seller or other person or entity, for the acts or omissions of such other broker, who shall not be deemed to be a subagent of Agent.

23) **AGENT'S DISCLAIMER.** Buyer and Seller acknowledge that Agent has not made any investigation, determination, warranty or representation with respect to, without limitation, any of the following: (a) the financial condition or business prospects of the Property, or of any occupant

Initial
BSS

Copyright Marcus & Millichap 2022

of the Property, or any occupant's intent to continue or renew its occupancy in the Property; (b) the legality of the present or any possible future use of the Property under any federal, state or local law or ordinance; (c) pending or possible future action by any third party or governmental entity or agency which may affect the Property; (d) the condition of the Property, including but not limited to, its physical condition, soil conditions, the integrity and quality of any improvements, and the presence or absence of fungi or wood destroying organisms or pests; (e) the accuracy or completeness of financial information concerning the Property including, without limitation, any income and expense information, projections of square footage, leases, licenses, options and other agreements affecting the Property; (f) the possibility that leases, options, or other contracts, matters or documents exist which affect or encumber the Property and which have not been provided or disclosed by Seller; (g) the presence or location of any hazardous materials on or about the Property, including but not limited to, asbestos, PCBs, lead paint, underground storage tanks or other toxic, hazardous or contaminated substances; (h) the accuracy of any information contained in any estoppel certificate or similar letter from any occupant of the Property; or (I) the number of legal parcels or units within the Property. When involved, Agent has acted solely as a conduit for the exchange of such information between Buyer and Seller and makes no representation or warranty whatsoever concerning the accuracy or reliability of such information.

Buyer agrees that investigation and analysis of the Property, including but not limited to the foregoing matters is Buyer's sole, independent responsibility and that Buyer shall not hold Agent responsible therefor. Buyer agrees and acknowledges that Buyer has not relied upon any representation of Agent in connection with Buyer's Purchase of the Property.

Buyer's Initials: __BSS__          Seller's Initials: _____

24) **AGENT'S LIMITED AUTHORITY AND RESPONSIBILITY.** Agent shall have no authority to bind either Buyer or Seller to any modification or amendment of this Agreement. Agent shall not be responsible for performing any due diligence or other investigation of the Property on behalf of either Buyer or Seller, or for providing either party with professional advice with respect to, without limitation, any legal, tax, engineering, construction or hazardous materials issues. Except for maintaining confidentiality of any information regarding Buyer or Seller's financial condition and any future negotiations regarding the terms of this Purchase Agreement, Buyer and Seller agree that their relationship with Agent is at arm's length and is neither confidential nor fiduciary in nature.

25) **LIMITATION OF AGENT'S LIABILITY.** Except for Agent's sole gross negligence or sole willful misconduct, Agent's liability for any alleged breach or negligence in the performance of Agent's work arising out of this Agreement shall be limited to the greater of Fifty Thousand Dollars ($50,000.00) or the amount of compensation actually received by the Agent as a Commission hereunder, as defined below.

26) **ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL: All disputes arising between the Parties, including Agent, with respect to the subject matter of this Representation Agreement (including but not limited to the payment of commissions as provided herein) shall be settled exclusively by final, binding arbitration. The judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.**

The arbitration will proceed in the county where Broker's office is located and be conducted by the American Arbitration Association ("AAA"), or such other administrator as the parties shall mutually agree upon, in accordance with the AAA's then-applicable Commercial Arbitration Rules (the "Rules"). Any party who fails or refuses to submit to arbitration following a demand by the other party shall bear all costs and expenses, including attorneys' fees, incurred by such other party in compelling arbitration.

The arbitration will be decided by a single arbitrator selected according to the Rules. The arbitrator will decide any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication and may grant any remedy or relief that a court could order or grant on similar motions. The arbitrator shall apply the provisions of this Representation

Buyer's Initials __BSS__ Seller's Initials _____



Copyright Marcus & Millichap 2022

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A24B4i

Agreement without varying therefrom, and shall not have the power to add to, modify, or change any of the provisions hereof.

In any arbitration proceeding discovery will be permitted only in accordance with the terms of this paragraph. Discovery by each party shall be limited to: (i) a maximum number of five (5) depositions limited to four hours each; (ii) requests for production of documents; (iii) two interrogatories: one inquiring into the amount of damages sought by the other party and another into the calculation of those damages; and (iv) subpoenas upon third parties for production of documents, depositions, and to appear at a hearing. The scope of discovery may be expanded only upon the mutual consent of the parties. Discovery not set forth in this paragraph shall not be permitted.

**The Parties understand and agree that they are entering into this arbitration agreement voluntarily, and that by doing so they are waiving their rights to a jury trial or to have their claims otherwise litigated in court.**

27) **ATTORNEYS' FEES:** In any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, including Agent, the prevailing party shall be entitled to recover its costs, including costs of arbitration, and reasonable expert witness and attorneys' fees in addition to any other relief to which such party may be entitled.

28) **SUCCESSORS & ASSIGNS.** This Agreement and any addenda hereto shall be binding upon and inure to the benefit of the heirs, successors, agents, representatives and assigns of the parties hereto.

29) **TIME.** Time is of the essence of this Agreement.

30) **NOTICES.** All notices required or permitted hereunder shall be given to the parties in writing (with a copy to Agent) at their respective addresses as set forth below, unless otherwise agreed by the parties. Should the date upon which any act required to be performed by this Agreement fall on a Saturday, Sunday or holiday, the time for performance shall be extended to 5:00 p.m. the next business day.

31) **FOREIGN INVESTOR DISCLOSURE.** Seller and Buyer agree to execute and deliver any instrument, affidavit or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated there under.

32) **ADDENDA.** This Agreement expresses the entire agreement of the Buyer and Seller concerning the Property and supersedes any and all previous agreements or understandings between the parties with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations with respect to the Property or this Agreement of any nature whatsoever, either express or implied, except as set forth herein. Any future modification of this Agreement will be effective only if in the form of addenda to this Agreement, in writing, signed by the party(ies) to be charged.

33.1) **EXPIRATION OF BUYER'S OFFER.** Buyer's signature hereon constitutes an offer by Buyer to acquire the Property from Seller on the terms and conditions set forth herein, and acknowledges Buyer's receipt of a copy of this offer. Unless acceptance hereof is made by Seller's execution of this Agreement and delivery of a fully executed copy to Buyer or Buyer's agent, either in person or by mail at the address shown below, **on or before April 13, 2026**, this offer shall be null and void, the Deposit shall be returned to Buyer, and neither Seller nor Buyer shall have any further rights or obligations hereunder. Delivery shall be effective upon personal delivery to Buyer or Buyer's agent, if any, or if by mail, on the next business day following the date of postmark.

33.2) **EFFECTIVE DATE.** The "Effective Date" of this Agreement shall be the later of (a) the date on which Seller executes this Agreement, or (b) the date of written acceptance (by either Buyer or

Buyer's Initials __BSS__ Seller's Initials __(Am)__

Copyright Marcus & Millichap 2022

Seller) of the final counteroffer submitted by the other party. ~~Seller and Buyer hereby acknowledge and confirm that the Effective Date is_____, 20___.~~

34) ~~MMCC FINANCING EVALUATION: Buyer agrees to review and consider a written loan quote for financing this transaction from Marcus & Millichap Capital Corporation (MMCC) within_____(___) days of the Effective Date. Agent will introduce Buyer to a MMCC capital markets advisor ("Advisor"). Buyer shall act in good faith to provide Advisor with the reasonable and necessary information (e.g., basic personal financial statements and related information, etc.) to provide a loan quote. Buyer expressly authorizes Agent to provide Buyer's information, including Property, transaction, and Buyer's financial information, to MMCC for purposes of providing the loan quote. Nothing herein is intended to guarantee or warrant that MMCC can or will secure financing for the Property. Any such financing services will be subject to separate agreement between MMCC and Buyer. Buyer understands and agrees that Agent shall not be responsible for or liable to Buyer in any fashion for, MMCC not obtaining financing for any reason. The obligations in this paragraph are strictly between Buyer and Agent only, and do not create any rights or obligations as between Buyer and Seller, or any other third party.~~

35) **GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

36) **NO DISCRIMINATION.** Federal and state laws make it illegal for Seller, Buyer, Agent or anyone else to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILY STATUS (children under 18 years of age), AGE (40 or over), NATIONAL ORIGIN, or USE OR HANDLING/TRAINING OF SUPPORT OF GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale or lease of property. Seller and Buyer agree to comply with the laws described in this Paragraph 35 in the sale or lease of the Property, and further agree to indemnify and hold Agent harmless from all liability arising from Seller's or Buyer's failure to comply with their respective obligations under this Paragraph 35 or any other such laws prohibiting discrimination.

37) **INTEGRATION AND SURVIVAL.** This Agreement contains the entire understanding and agreement between Buyer and Seller concerning the subject matter herein, and supersedes any and all prior agreements, understandings, promises and representations, whether written or oral, between the Buyer and Seller, concerning the subject matter hereof. Should any provision of this Agreement or portion thereof be deemed illegal, invalid or otherwise unenforceable, then to the maximum extent permitted by law, the remainder of the Agreement shall remain valid and binding as between the parties. This Agreement may be executed in counterparts, and transmitted by facsimile by and to the parties, and each such counterpart shall be deemed an original, and all of them together shall constitute a single instrument.

38) **REAL ESTATE RECOVERY FUND.** A Real Estate Recovery Fund exists to reimburse any person who has obtained a final civil judgment against a Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

39) **PUBLIC ROAD.** Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

40) **OTHER TERMS AND CONDITIONS:**

   • <u>Buyer is taking AS IS and agreeing to take on the remediation and violations noted by the EPA.</u>

Buyer's Initials **BSS**   Seller's Initials *[initials]*

Copyright Marcus & Millichap 2022

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A241B4

**THE PARTIES ARE ADVISED TO CONSULT WITH THEIR RESPECTIVE ATTORNEYS CONCERNING THE LEGAL EFFECT AND VALIDITY OF THIS AGREEMENT PRIOR TO ITS EXECUTION.**

**BUYER'S OFFER.** The undersigned Buyer hereby offers and agrees to acquire the Property for the Purchase Price and upon the terms and conditions of this Agreement. This offer is made by Buyer to Seller on this <u>7th</u> day of <u>April, 2026</u>.

BUYER: **Bakhshish Sandhu or one of its assignees**        ADDRESS: <u>1328 Jacob Drive, Yardley, PA 19067</u>

By: _Bakhshish S Sandhu_
Signed by:
Signature

TELEPHONE: __215-802-1750__

Its: _____
Title

FEDERAL TAX IDENTIFICATION NUMBER:
_____

BUYER: _____        ADDRESS: _____
_____
_____

By: _____
Signature

TELEPHONE: _____

Its: _____
Title

FEDERAL TAX IDENTIFICATION NUMBER:
_____

**SELLER'S ACCEPTANCE, AND AGREEMENT TO PAY COMMISSION.** The undersigned Seller accepts the foregoing Buyer's offer, and agrees to convey the Property to Buyer or Buyer's designee for the Purchase Price and upon the terms and conditions of this Agreement. Seller hereby acknowledges receipt of a fully executed copy of this Agreement and authorizes Agent to deliver a fully executed copy to Buyer.

Seller hereby reaffirms Seller's agreement to pay Agent a real estate brokerage commission ("Commission") pursuant to the terms and conditions of that certain Representation Agreement between Agent and Seller dated <u>3/12/2026</u>, which shall remain in full force and effect. Said Commission is payable to Agent in full by cash, certified check or cashier's check on the Closing Date. The Title Company is directed to make such payment to Agent from Seller's proceeds of the sale or exchange. The provisions concerning Agent's Commission may not be amended or modified without the written consent of Agent. Seller hereby acknowledges Agent's right to file a lien against the Property to secure any amounts due to Agent under, without limitation, the Commercial Real Estate Broker Lien Act.

SELLER: __Robert Holber__        ADDRESS: __41 E Front Street Media, PA__

By: _____        TELEPHONE: _610-565-5413_

3401 Tulip Street PSA        11 of 12        Buyer's Initials _BSS_ Seller's Initials _____
Copyright Marcus & Millichap 2022

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A241B4

Signature

Its: _____
Title

SELLER: _____          ADDRESS: _____

_____

_____

By: _____          TELEPHONE: _____
Signature

Its: _____
Title

Agent accepts and agrees to the foregoing.

BROKER OF RECORD: MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES

By: _____          ADDRESS:      2005 Market St. Suite 1510
Broker of Record                                   Philadelphia, PA 19103

TELEPHONE: 215-531-7000

PARTIES UNDERSTAND AND ACKNOWLEDGE THAT BROKER IS NOT QUALIFIED TO PROVIDE, AND HAS NOT BEEN CONTRACTED TO PROVIDE, LEGAL, FINANCIAL OR TAX ADVICE, AND THAT ANY SUCH ADVICE MUST BE OBTAINED FROM PARTIES' ATTORNEY, ACCOUNTANT OR TAX PROFESSIONAL.

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A241B4

## ADDENDUM AND AMENDMENT TO AGREEMENT OF SALE

THIS ADDENDUM AND AMENDMENT TO AGREEMENT OF SALE ("ADDENDUM") is made and entered into as of **7th Day of April 2026** by and between Robert H. Holber, Chapter 7 Trustee ("Trustee" or "Seller") and __Bakhshish Sandhu or one of its assignees__ (referred to "Buyer").

WHEREAS, on the date hereof, Buyer and Seller have simultaneously entered into an Agreement of Sale ("Agreement") with respect to the sale and purchase of real property located at: __3521 Tulip Street, 3501 Tulip Street, 3550R-98 Aramingo Avenue__ Municipality: **Philadelphia** (the "Property") (the "Transaction").

WHEREAS, the Agreement itself is in a format of a form document which makes it impractical to edit directly.

NOW THEREFORE, the parties intend that: (i) this Addendum shall be incorporated into the Agreement and amends the Agreement in full, but except as specifically amended by this Addendum, the Agreement terms shall control and (ii) the following terms apply to the Agreement:

1.    Notwithstanding anything in the Agreement to the contrary, the entire Agreement is subject to the approval and jurisdiction of the United States Bankruptcy Court of the Eastern District of Pennsylvania (the "Bankruptcy Court") in Bankruptcy Case of Tioga Fuel Company Inc. (the "Debtor") Case No. 25-12706-djb (the "Bankruptcy Case").

2.    Subject to the entry of the Approval Order by the Bankruptcy Court, Seller has full legal capacity, right, power and authority to enter into the Agreement. Subject to the entry of the Approval Order (defined below) by the Bankruptcy Court, the execution, delivery and performance by Seller of the Agreement and the consummation of the transaction is within Seller's powers and have been duly authorized by all necessary actions on the part of Seller. Subject to entry of the Approval Order by the Bankruptcy Court, the Agreement will constitute a valid and binding agreement of Seller that is enforceable in accordance with its terms.

3.    Seller and Buyer shall each use commercially reasonable efforts, and shall cooperate, assist and consult with each other, to secure the entry of an order (the "Approval Order") of the Bankruptcy Court in the Bankruptcy Case in form and substance acceptable to Seller and Buyer containing provisions, including without limitation: (i) approving the Agreement, (ii) authorizing the sale of the Property free and clear of any interests to the maximum extent permitted under Section 363 of the Bankruptcy Code, (iii) authorizing the Transaction, and (iv) providing that the Agreement and the Transaction is undertaken by Buyer and Seller at arm's length, without collusion, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code, that Buyer and Seller are entitled to the protections of Section 363(m) of the Bankruptcy Code, and that the provisions of Section 363(n) of the Bankruptcy Code are not applicable. Subject to the Approval Order, Seller and Buyer shall use commercially reasonable efforts to make any commercially reasonable filings, take all reasonable actions, and to obtain any and all other approvals and orders necessary for consummation of the transaction contemplated by the Agreement. Buyer acknowledges that consummation of the Transaction is subject to Seller's right to accept a higher and better offer from a third party (other than Buyer) for the acquisition of all or substantially all

#11979852v1<Active> - ADDENDUM TO AGREEMENT OF SALE

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A24184

the Property (a "Competing Transaction"), provided that any such other offer shall be at least $5,000 greater than Buyer's offer.

4.      If and only if the Due Diligence Period has expired (without the Buyer providing notice of termination) and the Seller sells the Property to another buyer in a Competing Transaction (if any), Seller shall pay Buyer the Deposit PLUS an additional $10,000.00 which shall consist of: (i) a break-up fee in the amount ("Break-Up Fee") and (ii) Buyer's reasonable and documented expenses (including attorneys' fees) incurred in connection with the Agreement and the Transaction contemplated herein (the "Expense Reimbursement," and together with the Break-Up Fee, the "Termination Payment"). The Termination Payment shall be payable at the closing of the Competing Transaction and solely form the proceeds of such Competing Transaction.

5.      Buyer is a sophisticated investor and its decision to purchase the Premises is based upon its own independent expert evaluations of such facts and materials deemed relevant to Buyer and its agents. Buyer has not relied in entering into the Agreement upon any oral or written information from the Seller or any of the Seller's agents, consultants, advisors or representatives except the Seller's Representations expressly set forth in the Agreement and in any of Seller's Closing Documents. Without limiting the generality of the foregoing, except as otherwise expressly provided herein, **BUYER ACKNOWLEDGES AND AGREES WITH SELLER THAT BUYER IS PURCHASING THE PROPERTY IN "AS IS", "WHERE IS" AND "WITH ALL FAULTS" CONDITION ON THE CLOSING DATE, INCLUDING ANY LATENT DEFECT OR NON-DISCOVERABLE DEFECT, SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES, EITHER EXPRESS OR IMPLIED OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF SELLER EXCEPT AS EXPRESSLY PROVIDED IN THE AGREEMENT OR IN ANY OF SELLER'S CLOSING DOCUMENTS, AND SELLER DISCLAIMS AND BUYER WAIVES ANY AND ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR AS TO ANY ENVIRONMENTAL MATTERS. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENTS, REPRESENTATIONS, REAL ESTATE BROKERS, "SET-UPS," OFFERING MEMORANDA OR INFORMATION PERTAINING TO THE PREMISES FURNISHED BY ANY REAL ESTATE BROKER, ADVISOR, CONSULTANT, AGENT, EMPLOYEE, REPRESENTATIVE OR OTHER PERSON. THE FOREGOING SHALL NOT RELEASE SELLER FROM ITS EXPRESS REPRESENTATIONS, WARRANTIES AND COVENANTS SET FORTH IN THE AGREEMENT OR IN ANY OF SELLER'S CLOSING DOCUMENTS.**

6.      Each party shall have performed and complied, in all material respects, with all of the material terms, conditions and covenants required by the Agreement to be performed and complied with prior to or on the Closing Date.

(a)      The Bankruptcy Court shall have entered the Approval Order in the Bankruptcy Case authorizing the 'Transaction and approving the Agreement under Sections 105(a), 363 of the Bankruptcy Code, in form and substance reasonably acceptable to Seller and Buyer, and the Approval

#11979852v1<Active> - ADDENDUM TO AGREEMENT OF SALE

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A241B4

Order shall contain findings that Buyer acquired the Purchased Assets in good faith, for fair value, in an arm's length transaction, and as of the Closing Date the Approval Order shall be in full force and effect, shall not then be stayed, and shall not have been vacated or reversed;

      (b)    The Bankruptcy Court shall have either (i) waived the stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure as to the Approval Order or (ii) such stay shall have expired pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure as to the Approval Order; and

      (c)    No injunction, stay or similar Order issued by any Governmental Authority shall be in effect that restrains, enjoins, stays or prohibits the consummation of the Transactions.

7.    Except if there is a Competing Transaction, in the event Seller does not receive the Approval Order to sell the Property to Buyer, the Agreement shall automatically terminate, the Deposit shall be returned to Buyer, and neither party shall have any other right, obligation, or liability hereunder (except for those which expressly survive). If, on the Closing Date, any of the other Conditions Precedent to Seller's obligation to consummate the purchase of the Premises have not been satisfied, Seller shall elect to either (i) waive such of those conditions as are unsatisfied and proceed to Closing without abatement of the Purchase Price; or (2) terminate the Agreement, in which latter event, the Deposit shall be refunded to Buyer and the parties hereto shall be released from all liabilities and obligations under the Agreement, except those which expressly survive termination of the Agreement. The foregoing shall not limit Seller's rights in the event the Conditions Precedent are not satisfied as a result of Buyer's default otherwise in the Agreement.

8.    Upon the entry of an order of the Bankruptcy Court authorizing the sale of the Property in a Competing Transaction ("Other Approval Order"), Buyer shall not be permitted to terminate the Agreement upon the entry of such an order if Buyer is determined to be the second highest bidder for the Property, in which case Buyer is required to remain bound by the terms of the Agreement pursuant until the earlier of (1) closing of the Competing Transaction or (2) thirty (30) days after entry of the Other Approval Order, after which time, Buyer shall have the right to terminate the Agreement by written notice to Seller.

9.    In addition to the above, the specific sections of the Agreement shall be amended as follows:

4    *Section 4 of the Agreement is amended as follows. Closing must take place within 30 days after the Approval Order.*

9.1    *Section 9.1 of the Agreement is amended as follows. It is acknowledged that the Seller/Trustee is a different entity than the Debtor. This Section only applies to the Seller/Trustee to the extent that the Trustee is in actual possession of such relevant documents or information.*

9.2    *Section 9.2 of the Agreement is amended as follows. The Sale Hearing and the Approval Order will only occur after the Due Diligence has expired.*

#11979852v1<Active> - ADDENDUM TO AGREEMENT OF SALE

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A241B4

9.3    *Section 9.3 of the Agreement is amended as follows. The Sale Hearing and the Approval Order will only occur after the Inspection Period has expired.*

26    *Section 26 of the Agreement is stricken. The Agreement is not subject to arbitration but rather the jurisdiction of the Bankruptcy Court*

32    *Section 32 of the Agreement is stricken. Addendums such as this Addendum are permitted and incorporated into the Agreement.*

33.1    *Section 33.1 of the Agreement is amended as follows. This deal will not expire by any date certain but rather, is subject to Bankruptcy Court approval.*

33.2    *Section 33.3 of the Agreement is amended as follows. The Effective Date is subject to approval by the Bankruptcy Court.*

[SIGNATURES TO FOLLOW ON NEXT PAGE]

#11979852v1<Active> - ADDENDUM TO AGREEMENT OF SALE

Docusign Envelope ID: 9ECB8DDE-3173-4568-B223-A71D45A24184

IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be duly executed the day and year first above written.

**SELLER:**

**ROBERT H. HOLBER, SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE**

By: _____
Name: Robert H. Holber
Title: Trustee


**BUYER:**

By: _____
Bakhshish S Sandhu

Name **Bakhshish Sandhu**
Title:

#11979852v1<Active> - ADDENDUM TO AGREEMENT OF SALE