**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| In re:<br><br>TIOGA FUEL COMPANY INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 25-12706-DJB |

**DECLARATION OF ROBERT H. HOLBER IN SUPPORT OF REVISION
TO MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER
APPROVING SALE OF REAL PROPERTY FREE AND
CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

I am the Chapter 7 Trustee of the above-captioned bankruptcy case. This Declaration is given in part on personal knowledge and in part on information and belief based on discussions with my counsel in this case, Flaster/Greenberg P.C., related to the Revision to Motion for an Order Approving Sale of Real Property Free and Clear of Liens, Claims, and Encumbrances and in support thereof, I certify as follows:

1.      On July 7, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

2.      Thereafter, I was appointed as the Chapter 7 Trustee of the Debtor's estate.

3.      The Debtor owns real property located at: (i) 3521 Tulip Street; (ii) 3501 Tulip Street and (iii) 3550R-98 Aramingo Avenue, Philadelphia, PA (the "Property").

4.      The Property is an approximately 4,400 square foot warehouse with a land area of 44,733 square feet in Philadelphia.

5.      On September 23, 2025 this Court entered an Order approving the Application to employ Marcus & Millichap (the "Broker") in connection with listing the Property for sale [Docket No. 27].

11819161 v1

15560811 v1

6.     The Property was originally listed for the asking price of $1,000,000 before the Petition Date.

7.     After an extensive marketing process, Marcus & Millichap located Lucas Sowa (the "Initial Buyer") as the buyer for the Property for $750,000.

8.     On September 26, 2025, a Sale Motion was filed [Docket No. 35] seeking approval of the $750,000 purchase price.

9.     On November 14, 2025, an Addendum to Purchase Agreement was filed changing the buyer entity to Lewis Bro LLC [Docket No. 58].

10.     A revised form of order seeking approval of the $750,000 purchase price with Lewis Bro LLC was filed on December 2, 2025 [Docket No. 63].  The revised order approving the initial sale was entered on December 3, 2025 [Docket No. 64] (the "Initial Sale Order").

11.     An addendum to the Initial Purchase Agreement was filed on January 16, 2026 [Docket No. 67] changing the escrow date.

12.     Unfortunately, the Initial Buyer defaulted on their agreement, refused to close and since has failed to respond to all subsequent inquiries by the Broker resulting in a request to vacate the Initial Sale Order.

13.     Since the default of the Initial Buyer, the Broker has reassessed the Property and has determined that the market value of the Property was far less than as the first buyer had offered (that overpayment may have contributed to their default). The Broker further speculated that the primary reason that the previous buyer was willing to pay such a premium was that he was planning on using the site in its current capacity as a fuel depot.

14.     As a result of the Initial Buyer's default, in consultation with the Debtor's secured lender (Citizens Bank), I requested that the Broker reassess its sales strategy.

15.    On February 14, 2026, the Broker prepared a detailed sales analysis (the "Sale Analysis"). The Sale Analysis reflected their sentiments on the Property and likely trade price given market feedback as well as updated comparables less any environmental concerns. The Broker's Sale Analysis considered comparables, applicable cap-rates and projected cash on cash returns for prospective investors. As a result, the Broker opined that that the Property should be valued at $375,000 to $525,000.

16.    I shared the Broker's Sale Analysis with Citizens Bank to ensure that the bank wanted to proceed with sale of the Property and continue to honor the previously negotiated carve-out as provided in the Motion for an Order Authorizing Carve-Outs for the Benefit of the Estate [Docket No. 44].

17.    Citizens accepted the Broker's new marketing approach and value for the Property.  Further, in light of the lower sale price proposed herein, together with Citizens, we agreed to lower the Carve-Out remaining to be paid from this sale $80k (instead of $91k).

18.    Thereafter, the Broker went back out to market to search for alternative buyers for the Property.

19.    On or about April 10, 2026, I entered into a Purchase Agreement (the "Purchase Agreement") with Bakhshish Sandhu as the new buyer (the "Buyer") for the Property for the purchase price of $475,000.

20.    On or about April 15, 2026, my counsel filed the Motion to Sell Property Free and Clear of Liens under Section 363(f) 3521 Tulip Street; 3550R-98 Aramingo Avenue [Docket No. 70] (the "Sale Motion").

11819161 v1

15560811 v1

21.     On or about April 28, 2026, an Addendum to Purchase Agreement for the Property was filed, changing the Buyer entity from Bakhshish Sandhu to 3501 TULIP ST LLC [Docket No.73].

22.     The Buyer was required to make a $50,000 deposit to the escrow agent and, as of the date hereof, has done so.

23.     After the due-diligence period as provided in the Purchase Agreement has expired, the Buyer will have agreed to accept the Property on an as-is where-is basis.

24.     The Buyer has waived all further inspection and financing contingencies.

25.     The Sale is subject to higher and better offers from third parties.  Unless and until any higher and better offer with an alternate purchaser is approved and consummated, the Buyer will continue to remain obligated on the Purchase Agreement.

26.     The Broker has agreed to a commission of 5% of the Purchase.

27.     Based on my many years of experience, and considering all factors here, I believe that this sale transaction to the Buyer is the highest and best offer that can be obtained for the Property.

28.     I believe that consummation of the transaction with the Buyer is in the best interest of the estate and is a valid exercise of my sound business judgment.

29.     To the best of my knowledge and belief, there has been no collusion between the Buyer and any other potential bidder.

30.     The negotiations with my professionals and the Buyer were at all times conducted at arms-length and in good faith, and the Buyer should be deemed a good faith Buyer with respect to the transactions contemplated here.

11819161 v1

15560811 v1

31.    Based on my experience as a Chapter 7 Trustee and upon reliance on the advice from my professionals, I believe that entry of the Order approving the Sale Motion is justified and should be approved.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: May 5, 2026

By:    /s/ Robert H. Holber
_____
Robert H. Holber, Chapter 7 Trustee

11819161 v1

15560811 v1