# SHARER PETREE BROTZ & SNYDER
*Certified Public Accountants*
*Business Advisors*

| 210 W. Rose Tree Road | Laurelwood Corporate Center | |
|---|---|---|
| P.O. Box 733 | 1103 Laurel Oak Road | Tel: 856-435-3200 |
| Media, PA 19063 | Suite 105B | Fax: 856-435-4868 |
| 610-647-7840 | Voorhees, NJ 08043 | www.SharerPBS.com |

Bankruptcy Estate of Tioga Fuel Company Inc.
c/o Robert H. Holber, Trustee
Robert H. Holber, PC
41 East Front Street
Media, PA 19063

June 9, 2026

Re: Bankruptcy Estate of Tioga Fuel Company Inc.
Case No. 26-12706-djb, Eastern District of Pennsylvania (Philadelphia)

Dear Mr. Holber:

## 1. Introduction

This letter confirms that we, Sharer Petree Brotz & Snyder ("SPBS"), have been retained by you, Robert H. Holber, Chapter 7 Trustee of the Bankruptcy Estate of Tioga Fuel Company Inc. ("Tioga") to provide the services ("the Services") set out below. We agree that this letter and the related Terms and Conditions constitute the arrangement pursuant to which such Services will be provided.

## 2. Scope of our Services

At your request, the Services to be performed by SPBS may include the following:

- Prepare any tax returns and any other accounting needs for the bankruptcy estate.
- Provide any additional financial advice and assistance to the Trustee as may be needed.

Such Services, as outlined above, are subject to change as mutually agreed between us.

SPBS is engaged by the bankruptcy estate to provide accounting and consulting services only. Accordingly, while we may from time to time suggest various options, which may be available to you, and further, give our professional evaluation of each of these options, the ultimate decision as to which, if any, of these options to implement rests with the trustee. SPBS and its individual partners, principals and employees will not make any management decisions for the bankruptcy estate and will not be responsible for communicating information concerning the bankruptcy estate.

Members – American Institute of Certified Public Accountants, New Jersey Society of Certified
Public Accountants, Pennsylvania Institute of Certified Public Accountants

As part of our engagement, SPBS may be requested to assist the bankruptcy estate (and its legal or other advisors) in negotiating with the estate's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the trustee, not SPBS or its partners, principals and employees.

3.   **Fees**

Fees in connection with this engagement will be based upon the time necessarily spent in providing the Services, at our standard hourly rates, summarized as follows:

|  | Per Hour |
|---|---|
| Partner | $375 - $450 |
| Managers | $310 - $375 |
| Senior Associates | $250 - $295 |
| Associates | $150 - $225 |

Hourly rates are revised from time to time. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, SPBS will bill the bankruptcy estate for reasonable expenses, which are likely to include mileage, facsimile, duplicating and printing, postage, etc.

In engagements of this type, our fees are subject to application before the U.S. Bankruptcy Court and guided by the local rules regarding fee applications of professionals. Upon receipt of an order approving our fees and expenses, the trustee agrees to remit payment for our services to the extent that sufficient funds exist in the bankruptcy estate to do so.

Invoices for fees and expenses incurred in connection with this engagement will be billed when fee application are filed with the court.

4.   **Terms and Conditions**

The attached terms and conditions set forth the duties of each party with respect to the Services. Further, this letter and the terms and conditions attached comprise the entire engagement (the "Engagement") for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations and shall supercede all previous letters of engagement, undertakings, agreements and correspondence regarding the Services.

**SHARER PETREE BROTZ & SNYDER**

5.    **Assignment**

This Agreement and the rights and obligations hereunder shall not be assignable or transferable by any party hereto without the prior written consent of the other parties hereto, except that it is understood that SPBS may assign this Agreement or any portion of it to any successor in interest to all or part of its Litigation and Insolvency Services practice without the prior written consent of any other party hereto.

6.    **Governing Law and Jurisdiction**

The contract shall be governed by and interpreted in accordance with the laws of U.S. Bankruptcy Court in which our application for retention has been ordered. This Court shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Contract and any matter arising from it. The parties irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought to an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.    **Conflicts of Interest**

We do not believe that any conflicts of interest exist. We will advise you as promptly as possible of the circumstances of any such engagements for other parties in this matter which create a potential conflict of interest, should the engagement team become aware of such an engagement.

8.    **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of our engagement under the Contract by signing the confirmation below and returning a copy of this letter and a copy of the attached terms and conditions to us at the above address.

SHARER PETREE BROTZ & SNYDER

If you have any questions regarding this letter or the attached terms and conditions, please do not hesitate to contact us.

Yours faithfully,

Sharer Petree Brotz and Snyder

Confirmation of Terms of Engagement

**We agree to engage SPBS upon the terms set forth in this Letter of Engagement and the related Standard Terms and Conditions from SPBS.**

Signed: _____   Robert H. Holber
Solely in his capacity as Chapter 7 Trustee in the Bankruptcy Estate of Tioga Fuel Company Inc.

Date: ___6/17/26_____

SHARER PETREE BROTZ & SNYDER

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached Letter of Engagement with the Bankruptcy Estate of Tioga Fuel Company Inc. dated June 9, 2026.   The Letter of Engagement and the Standard Terms and Conditions (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services. It replaces and supersedes any previous proposals, correspondence understandings or other communications whether written or oral. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.      Reports and Advice**

1.1      **Reliance on drafts** – You acknowledge that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by us as the same may be subject to further work, revision and other factors which may mean that such drafts are substantially different from any final report or advice issued.

1.2      **Our responsibility for final reports** – In the event we will be acting as independent experts, our reports or advice must be objective and impartial. While we will be prepared to discuss draft reports, which do not constitute our final opinion, the content of our final report is a matter for us alone.

1.3      **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party or refer to us or the Services without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.      Information and Assistance**

2.1      **Provision of information and assistance** – Our performance of the Services is dependent upon you providing us with such information and assistance as we may reasonably require from time to time.

2.2      **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3      **Your responsibility for information provided** – Any reports issued or conclusions reached by us may be based upon information provided by and on your behalf.

2.4      **No assurance on financial data** – While our work may include an analysis of financial accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof.  Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile any such financial information.  Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on the financial statements or financial components of the Company.

2.4.1    **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination, compilation or apply agreed-upon procedures in accordance with standards established by the American Institute of Certified Public Accountants, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of the expected results anticipated by the management of the Company.

**STANDARD TERMS AND CONDITIONS**
(Continued)

3. **Fees and Additional Services**

3.1    **Changes to Services** – Either party may request changes to the Services. Any variation to the Engagement, including any variation to fees, services or time for performance of the Services, must be separately agreed to in writing and, if agreed, shall form part of the Engagement Contract.

3.2    **Payment of fees** – Time for payment of fees and expenses shall be of the essence after entry of an order approving our fee applications filed with the U.S. Bankruptcy Court based on availability of funds in the bankruptcy estate.

4. **Confidentiality**

4.1    **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall not include information that:

4.1.1    is or becomes generally available to the public other than as a result of a breach of an obligation under this clause;

4.1.2    is acquired from a third party who, to our knowledge, owes no obligation of confidence in respect of the information; or

4.1.3    is or has been independently developed by the recipient.

4.2    **Disclosing confidential information** – Notwithstanding clause 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days notice in writing is first given to the other party.

4.3    **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, we may cite generally the performance of the Services to our clients and prospective clients as an indication of our experience, unless we both specifically agree otherwise in writing.

4.4    **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other SPBS entity or use it for internal quality reviews.

4.5    **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our professional standards. It is the policy of SPBS not to retain copies of our working papers for more than two years after our work is completed.

5. **Termination**

5.1    **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all fees and expenses incurred by SPBS through the date termination notice is received.

5.2    **Continuation of terms** – The terms of the Engagement Contract that expressly or by implication are intended to survive its termination or expiration will survive and continue to bind both parties.

(2)

**STANDARD TERMS AND CONDITIONS**
(Continued)

6.      **Indemnification and Liability Limitation**

        |LEFT INTENTIONALLY BLANK|

7.      **Results**

7.1     You accept and acknowledge that we have not made any warranties or guarantees of any nature with respect to the results, outcome or final developments in this matter or with respect to the economic, financial or other results, which you may experience as a result of the provision of the Services.

8.      **Working for Other Clients**

8.1     We will not be prevented or restricted by anything in the Engagement Contract from providing services to other clients as long as it does not represent a conflict to our retention to work for this bankruptcy estate. We will take reasonable steps to ensure that confidential information communicated to us during the course of this Engagement will be maintained confidentially and will not be disclosed or made available to partners, principals and staff who do not have a need to know such information for purposes of performing the Engagement.

**Sharer, Petree, Brotz & Snyder**

**Confirmation of Standard Terms and Conditions**

**We agree to engage SPBS upon the terms set forth in these Standard Terms and Conditions as outlined above.**

_____
Signature

Robert N. Snyder, Jr., CPA
For the Firm

_____
Signature

Robert H. Holber,
Solely in his capacity as Chapter 7 Trustee for the bankruptcy estate of Tioga Fuel Company Inc.

_____
Date

(3)

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In Re:                                      :        Case No: 26-12706
                                            :
    TIOGA FUEL COMPANY INC.          :
                                            :
                                            :
        debtor(s)                 :        Chapter 7
                                            :

## DECLARATION OF PROPOSED ACCOUNTANT

I, Robert N. Snyder, Jr., CPA, declare as follows:

1. A am a Certified Public Accountant, and my firm maintains offices in Pennsylvania and New Jersey.

2. I am a partner of SHARER PETREE BROTZ & SNYDER which maintains offices at 1103 Laurel Oak Road, Suite 105 B, Voorhees, New Jersey 08043 and 210 W. Rose Tree Road, PO Box 733, Media, PA 19063.

3. I have checked our firm's docketing and conflict check system and based upon my review, I have ascertained that the firm has no connection with the Debtor, its creditors, or any other party in interest herein, or their respective attorneys or accountants.

4. The firm represents no interest adverse to the Debtor's Estate in the matters upon which it is to be engaged.

_____
Robert N. Snyder, Jr., CPA

Dated: 6/9/25

1